Malcolm **WOMACK** et al., Appellants,

v.

**ALLSTATE INSURANCE COMPANY,**
Appellee.

No. 6548.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 27, 1955.

Rehearing Denied Jan. 30, 1956.

Casey Charness and Shaw & Daniel, Lubbock, for appellants.

Sanders, Scott, Saunders & Smith, Amarillo, for appellees.

NORTHCUTT, Justice.

Malcolm Everett Womack and his wife, Dorothy Womack, and James E. Cryer and his wife, Elouise Cryer, all as plaintiffs, brought a suit against William T. Coffee and another for damages because of an automobile collision that occurred on July 20, 1952. By said suit, Malcolm Womack and wife, Dorothy Womack, on June 23, 1953 recovered a default judgment against William T. Coffee for the sum of $2,850 and James E. Cryer and wife, Elouise Cryer, on June 23, 1953 recovered a default judgment. against William T. Coffee for the sum of $350, both amounts aggregating the sum of $3,200. Appellants were unable to collect this judgment as against Coffee and brought this action against appellee to recover the $3,200 with interest from the date of the judgment alleging they were entitled to recover against appellee by virtue of an insurance policy issued by appellee covering the injuries sustained by appellants in the automobile collision above mentioned. Appellee filed its answer setting up numerous reasons why appellants were not entitled to recover against it. Thereafter, appellee filed its motion for summary judgment and, after proper hearing on said motion, the trial court entered summary judgment therein and, from this judgment, appellants perfected this appeal.

Appellants assigned as error on the part of the trial court in entering the summary judgment that there were genuine issues of material facts involved; that the motion for summary judgment was based on insufficient and improper affidavits; the trial court erred in not protecting appellants who were unable to secure affidavits to justify their opposition to appellee's motion for summary judgment in accordance with Rule 166-A(f), Texas Rules of Civil Procedure; that the trial court considered and did not strike improper evidence presented by appellee in its pleadings and motion for summary judgment; that the trial court erred in not allowing appellants a trial by jury on issues on whether any misrepresentations, if any, were in fact, made by appellee's insured, was material to the risk or actually contributed to the contingency upon which the policy became due and payable; that appellants were third-party beneficiaries of the contract of insurance herein sued upon and said contract became absolute under Texas Motor Vehicle Safety-Responsibility Act, Vernon's Ann.Civ.St. art. 6701h, at a time prior to the accident out of which appellants' cause of action arose, and the trial court erred in holding, as a matter of law, the contract of insurance herein sued upon had been cancelled and was not in force at the time of the accident out of which appellants' cause of action arose.

■■ In support of its motion for summary judgment, the appellee filed an affidavit made by one Jack Walding. The affidavit began as follows:

"Comes now Jack Walding, a duly authorized representative of the Defendant Allstate Insurance Company, and makes known to the Court the following facts by affidavit:"

The affidavit then sets out the matters concerning the application for insurance, the issuance of the policy and the cancellation of the policy and attaches to said affidavit a true photostatic copy of the declaration and also a copy of the policy issued and letter or notice cancelling the insurance policy. There were copies of other instru-

ments also attached to the affidavit but we do not deem it necessary to mention them as they did not affect this appeal. Jack Walding signed the affidavit and took the following oath:

"The State of Texas ⎫
County of Dallas ⎭ ss.

"Before Me, the undersigned authority, on this day personally appeared Jack Walding, who being by me first duly sworn on his oath stated that the representations set out in the foregoing Affidavit are true.

"Sworn and subscribed to by the said Jack Walding before me on this 16th day of September, 1954.

/s/ Paul R. Breeding

(Seal) Notary Public in and for Dallas County, Texas
Paul R. Breeding"

The main contention of appellants is that the trial court erred in granting appellee's motion for summary judgment because the motion was based on insufficient and improper affidavit contending that the affidavit made by Jack Walding was insufficient, improper and also not made on personal knowledge of affiant as required by Rule 166–A(e), Texas Rules of Civil Procedure which states:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Black's Law Dictionary, Third Edition, defines an affidavit as:

"A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath."

The same authority defines an oath as:

"An external pledge or asserveration, made in verification of statements made or to be made, coupled with an appeal to a sacred or venerated object, in evidence of the serious and reverent state of mind of the party, or with an invocation to a supreme being to witness the words of the party and to visit him with punishment if they be false."

The distinction between an affidavit and an oath appears to be that an affidavit consists of a statement of facts which is sworn to as the truth while an oath is a pledge. The oath of Jack Walding stated on *his* oath that the representations set out in the affidavit were true. It was shown he was a duly authorized representative of the appellee, instruments were attached to the affidavit showing the truthfulness of the affidavit. Walding did not set forth information and belief or any other such statements that the things were true but when he stated on *his oath*, we think is the same as from his personal knowledge and that complies with the requirements of Rule 166–A(e) of Texas Rules of Civil Procedure. Tucker v. Neal Oil Corp., Tex.Civ. App., 255 S.W.2d 302.

█ █ It is the further contention of appellants under different sections of Articles 6701h and 6687b that they were third-party beneficiaries of the contract of insurance which contract became absolute under Texas Motor Vehicles Safety-Responsibility Act at a time prior to the accident out of which appellants' cause of action arose. There is nothing in this record to indicate that the insurance policy in question was issued according to the contentions made as to Article 6687b but, in fact, the application for the insurance policy in question is right to the contrary. There cannot be any question about either the insurance company or the insured having the right to cancel the insurance policy because the policy so provides and was a part of the contract. Of course, there would have been another question here involved if appellants had been injured while the contract of insurance was still in effect. In this case, the appellee had cancelled Policy W–518806, the policy here in issue, effective on June 7, 1952 at 12:01 a. m. Standard Time. The

injuries complained of by appellants, as shown by their own pleadings, happened on July 20, 1952 at approximately 5:40 p. m., some 44 days after the policy had been cancelled under the terms and in accordance with such policy, and Article 6701h did not apply herein. We have not discussed the fact that appellee, on October 16, 1952, wrote the insured that the policy in question was void from its inception and enclosed a check to the insured for the full return of the premium of $34.25 paid by the insured and which check was accepted and cashed by the insured and paid on June 10, 1953 because the insurance company had previously, before any accident had ever happened, cancelled said policy and notified the insured by letter addressed to the address set out in the policy which letter was returned for better address and, under such facts, it is immaterial whether the insured received the notice or not and, under this record, appellants could be under no better position than the insured. We think the policy had been cancelled approximately 44 days before any accident happened and that appellee having the right to cancel the policy according to the terms of the policy and having exercised that right by its notice of cancellation mailed to the insured at the address stated in the policy, the policy appeared ended on June 7, 1952 at 12:01 p. m. These facts having been proved definitely by proper affidavit and instruments attached would render it unnecessary to discuss other assignments of error. Insurance Co. of Texas v. Parmelee, Tex.Civ.App., 274 S.W.2d 944.

Appellants' assignments of error are overruled. Judgment of the trial court is affirmed.

MARTIN (dissenting).

The majority opinion in this cause predicated an affirmance of the summary judgment of the trial court on the proposition that the insurer had cancelled the policy of insurance in issue prior to the occurrence of the loss on July 20, 1952. Under provision 20 of the policy in issue is found this clause:

"This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. * * *"

The policy reveals that the application therefor was executed by Mrs. L. N. Coffee, 3001 East 4th Street, Lubbock, Texas, the wife of William Coffee. The alleged cancellation in issue was mailed by the company to Mr. L. N. Coffee, 3001 East 4th Street, Lubbock, Texas on May 26, 1952.

On the issue of proper mailing of the cancellation notice, the admissions of the insurer on file in the cause reveal that on March 26, 1952, Mrs. L. N. Coffee advised Tom Lehr, an agent of insurer, to transfer the insurance coverage of the policy in issue from a 1949 Ford to a 1952 Chevrolet. It is further admitted by insurer that on such date Mrs. L. N. Coffee likewise advised Tom Lehr, the agent for insurer, to change her address in the policy from "3001 East 4th Street, Lubbock, Texas" to "General Delivery, Lubbock, Texas." In conjunction with the above admissions, it is further shown that the agent for the insurer prepared "Form–R–42", changing the coverage under the policy from the 1949 Ford to a 1952 Chevrolet. Further the insurer's agent, Tom Lehr, in such "Form–R–42", changed the address of Mrs. L. N. Coffee to General Delivery, Lubbock, Texas. The insurer admits that its agent, Tom Lehr, mailed the original of this "Form–R–42" to insurer. Since insurer's agent, Tom Lehr, prepared the above "Form–R–42", changing the insurance policy coverage from a 1949 Ford to a 1952 Chevrolet and also changing the address of the insured to General Delivery, Lubbock, Texas and mailed such form to the insurer, it is a reasonable presumption that such "Form–R–42", prepared by the company, constituted a rider or change of the coverage and provisions of the policy in issue. Since the actual policy as issued to

insured is apparently not in the record but only a like copy to that issued, it cannot be ascertained whether "Form–R–42" was attached to the original policy as a rider or was a separate contract or agreement. But it is not material whether such form was a rider or a separate contract as prepared by insurer. The notice of change of address as well as change of insurance coverage on automobiles, either became a part of the policy as a rider or was a separate contract of the insurer and binding on it. Aetna Ins. Co. v. Houston Oil & Transport Co., 5 Cir., 49 F.2d 121, Syls. 1–4.

The above facts are fully corroborated by additional facts and presumptions based thereon as presented in the affidavit of insurer's agent, Jack Walding, which states:

"On October 16, 1952, Allstate Insurance Company declared void from its inception Policy No. W–518806."

The affidavit reveals that such notice was sent insured approximately three months following the collision in issue. Walding's affidavit further reveals that the notice of the company declaring the policy in issue void from its inception was mailed to "Mrs. L. N. Coffee, General Delivery, Lubbock, Texas." The affidavit of Walding therefore evidences that the company recognized its own "Form–R–42", as a rider on the policy and as effecting a substitution for the original address shown in the face of the policy. Further, such affidavit by insurer's agent leads to the reasonable presumption that since the insurer, approximately three months following the collision in issue, sent to Mrs. L. N. Coffee a notice that the policy was void from inception, it recognized no prior notice of cancellation had been given under the terms of the policy as to effectivate a cancellation of the same. Also, the binding effect of "Form–R–42" was recognized by the insurer in its mailing to insured at the address given in such Form of the notice as to the policy being void from inception. The facts above detailed are either conclusive as a matter of law on the issue of non-cancellation of the policy, or, they, at least, present an issue of fact as to whether the insurer through its agent

changed the coverage in the policy and the address of insured by a rider or contract binding on it. It is admitted that the alleged notice of cancellation was only mailed to the former address and not to the address shown in "Form–R–42".

"Notice of cancellation by insurer must be in accordance with the provisions of the policy or statute, strict compliance therewith being necessary, and all ambiguities in the notice will be resolved in favor of insured." 45 C.J.S., Insurance, § 450b(1), p. 86. Brewer v. Maryland Cas. Co., Tex.Civ. App., 245 S.W.2d 532, Syl. 6.

But, overall, it must be kept in view that the judgment in issue is a summary judgment. It is not the province of the trial court nor of this Court to determine whether the facts have been proven definitely by proper affidavits or other instruments but merely to determine if there are any issues of fact to be tried. The entire record has not been discussed in this dissent but only the issue pertinent to the majority opinion rendered in the cause. If the cancellation of the policy was ineffectual then the issue of invalidity of the policy by reason of fraudulent statements being made in the application therefor becomes an issue. It is apparent that issues as to false and fraudulent representations being made in procuring the policy of insurance must be predicated on fact elements and appellant is entitled to a trial of the cause on its merits and not by affidavit.

"The duty of the court hearing the motion for summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. * * * As said in the case of Kaufman v. Blackman, Tex.Civ.App., 239 S.W.2d 422, 428, writ refused, N.R.E., 'The underlying purpose of Rule 166–A was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact.' The

burden of proving that there is no genuine issue of any material fact is upon the movant, and 'All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment.'" Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, at page 931.

The summary judgment should be reversed and the cause remanded for trial on its merits.