## Commonwealth *v.* Lardo, Appellant.

Submitted November 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Albert Martin.* for appellant.

*Louis R. Paulick* and *Robert L. Eberhardt,* Assistant District Attorneys, *John M. Tighe,* First Assistant District Attorney, and *John J. Hickton,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., April 22, 1976:

This appeal is taken from judgments of sentence rendered following non-jury trials and verdicts of guilty on various charges of operating a lottery.[1] On October 18, 1974, trial was held before Judge John W. O'BRIEN, who adjudicated appellant guilty and, on January 14, 1975 suspended a sentence of imprisonment of one to three years and a fine of 6¼¢, and placed appellant on probation for three years and ordered a fine of $5,000.00 to be paid.

On October 24, 1974, another trial was held before Judge Loran L. LEWIS, who adjudicated appellant guilty

---

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa. C.S. §5512.

and, on January 14, 1975, imposed sentence of eight to twenty-three months imprisonment together with a fine of 6¼¢, sentence to be stayed pending appeal to this Court. We ordered the appeals consolidated. There is one issue pertaining to both cases, viz., whether or not the affidavits to the search warrants as executed on J.P. Criminal 74-R2006 Form promulgated by our Supreme Court of Pennsylvania were in substantial compliance with *Pennsylvania Rule of Criminal Procedure* No. 2006. As to each case, a search warrant was issued and search made of premises described therein, resulting in arrest of appellant and seizure of certain items of evidence which were the subject of suppression motions in each trial. Suppression motions were denied. Appellant now alleges that denial of these motions was error, arguing that the warrant forms' failure to contain both a certification for the jurat and a separate one for the issuance of the warrant instead of one certification serving both purposes is a fatal defect. In each case, the contents of the warrants and information alleged in the affidavit are not otherwise challenged.

With respect to the appeal at our Number 342 April T., 1975, Trooper Drish of the Gambling Detail of the Pennsylvania State Police surveilled the appellant's activities at and near No. 7134 Thomas Boulevard in the City of Pittsburgh, on the 14th, 15th, 16th and 17th of May, 1974. With the information he acquired from his observations together with other substantial information giving him probable cause he secured a search warrant on May 20, 1974, for the apartment above a garage at the rear of 7134 Thomas Boulevard and for the person of appellant. On that same day he executed the search warrant. In the apartment was the appellant, 18 brown paper bags containing "numbers" slips for past bets, a shoe box containing tapes for an adding machine, numbers slips and $300.00 in currency, a Victor adding machine, and a clip board containing current numbers bets. The post-dated and current numbers slips indicated a total play of $111,000.00.

With respect to the appeal at our Number 287 April Term, 1975, Trooper Drish on June 6, 1974 having information giving him probable cause secured a search warrant for Room 403 at the Sheraton Inn in the Monroeville Mall, together with warrants to search the persons of appellant and a co-defendant Alfred R. Schipani, Jr. On that same day, he and two other Troopers executed the warrants. In the lobby of the Inn, Mr. Schipani was found. He had a paper bag containing current numbers bets totaling approximately $3,051.00 and dated June 6, 1974. In the room (apartment) there were the appellant, another person, two adding machines, a suitcase containing bags of numbers slips and currency in the amount of $455.00. The plays indicated on the numbers slips found in the room were as follows:

$9,876.54 for May 31, 1974;

1,740.68 for June 1;

10,795.80 for June 3;

8,348.10 for June 4;

9,395.29 for June 5; and

5,526.05 for June 6, 1974.

With further respect to the appeal at Number 342 April Term, 1975, the record indicates no filing of any post-trial motions.[2] The docket entries have no reference to them nor to any order refusing such motions. Ordinarily we would be foreclosed from considering any issues in this appeal under the ruling in *Commonwealth v. Coleman*, 458 Pa. 324, 327 A.2d 77 (1974). However, the opinion of the court below states that "the defendant's Motion for a New Trial and Arrest of Judgment was also denied" and the opinion considers the one issue of whether or not the affidavit accompanying the search warrants was in substantial compliance with *Pa. R.*

---

2. The transcript of the testimony indicates that counsel for appellant said he intended to file a motion for a new trial.

*Crim. P.* 150. One basic reason for the foreclosure by the Appellate Courts from consideration of any issues not raised by post-trial motions is that failure to raise them below deprives the lower court of the opportunity to consider them. Here the court below took the opportunity to consider the one issue relating to the warrant affidavit. Furthermore the identical issue is raised in the appeal at Number 287 April Term, 1975. Hence we will consider that issue as if it were properly raised in both appeals.

The Constitution of Pennsylvania, Article 1, §8 and the *Pennsylvania Rule of Criminal Procedure* 2003 set forth the requirements for issuance of a search warrant. In pertinent part, Rule 2003, reflecting the Constitutional provision, provides as follows:

> "(a) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority."

The appellant attacks the affidavits of Trooper Ronald Drish claiming that because there is not one place for the issuing authority to sign and affix his seal to the jurat and another separate place for him to sign and affix his seal for his issuance of the search warrant the affidavit is in effect no affidavit.

There is no separate definition of an affidavit in the *Pa. R. Crim. P.* The word is defined in one of our statutes, November 25, 1970, P. L. 707, No. 230, added December 6, 1972, P.L. 1339, No. 290, §3, as amended December 10, 1974, P.L. 816, No. 271, §4, imd. effective, 1 Pa. C. S. §1991:

> " 'Affidavit.' A statement in writing of a fact or facts signed by the party making it, sworn to or affirmed before an officer authorized by the laws of this Commonwealth to take acknowledgments of deeds, or authorized to administer oaths, or before the particular officer or individual designated by law as the one before whom it is to or may be taken, and officially certified to in the case of an officer under his seal of office."

Case law defines an "affidavit" as a statement in writing under oath administered by a duly authorized person. *In Re: Breidt*, 84 N.J. Eq. 222, 94 A. 214 (1915); *Youngker v. State of Florida*, Fla. App. Ct., 215 S. 2d 318 (1968); *Womack v. Allstate Insurance Company*, Tex. Civ. App., 286 S.W. 2d 308 (1956).

The application for the search warrant in the instant case after the caption starts out as follows:

"Tpr. Ronald Drish Penna. State Police 565-5700 being duly sworn (or affirmed) before me according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at particular premises or in the possession of particular person as described below."

Thereafter continues a recitation of the facts and circumstances supporting probable cause followed by the signature of "Ronald Drish." Immediately thereafter continues the following language:

"TO LAW ENFORCEMENT OFFICER:
WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the above described premises or person, and to seize, secure, inventory, and make return according to the Pennsylvania Rules of Criminal Procedure, the above described items.
This Warrant should be served as soon as practicable but in no event later than 1:50[ ]A.M.[X]P.M. June 8th, 1974 and shall be served only during daytime hours of 6 A.M. to 10 P.M.

Issued under my hand this 6th day of June, 1974, at 1:50 P.M. o'clock.
/s/ John H. Salton
(SEAL)"

From the foregoing it is readily seen that the document

in question is a statement in writing of a fact or facts signed by the party making it, sworn to before an officer designated by law as the one before whom it is to be taken and officially certified to under the seal of his office. In other words it is an affidavit.

The appellant nevertheless claims that since the form J.P. Criminal 74-R2006 does not comply exactly with the sample required by Rule 2006 the affidavit must be struck down. He points out that the sample has one place for the magistrate to sign and seal a jurat and another place for him to sign and seal his issuance of the warrant. He claims that since the magistrate signed and sealed only in one place the affidavit is not signed and sealed by the magistrate and is invalid.

The appellant relies on *Commonwealth v. McAfee*, 230 Pa. Superior Ct. 336, 326 A.2d 522 (1974). In *McAfee*, there was no complaint about the lack of a place for the magistrate to sign and seal. There was a jurat to be used but the magistrate had not signed or sealed the jurat. We held that the complete absence of any written record that the affiant was in fact sworn to his signed statement invalidated the search warrant and required suppression of the evidence seized. It should be noted that in *McAfee* the affidavit and the warrant were two separate papers. In the instant case both the affidavit and search warrant are one piece of paper. Appellant's position would require us to hold that the form used for the affidavit and search warrant must be exactly the same as the form sample shown in the rule. The rule itself does not require such exactitude; it provides expressly that the affidavit and warrant shall be substantially in the form set forth in the rule. Substantially means "essentially" or to "an important degree." A comparison of the form used in the instant case with that depicted in the rule discloses a variance to an unimportant degree and indicates that they are essentially the same. A jurat, when completed, is a certification that the signed statement made by the affiant was made under oath or affirmation.

Any realistic reading of the magistrate's certification under his hand and seal leads to the conclusion that the signed written statement of the affiant was made under oath and that the certification substantially complies with Rule 2006. The form J.P. Criminal 74-R2006 was designed to combine the two certifications of the magistrate, the one for the jurat and the other for the issuance of the search warrant into one act to facilitate the work of the magistrate for the reason that the one would in the great majority of cases normally follow the other.

While in the appeal at Number 342 April Term, 1975, the magistrate executed the certification on the affidavit and warrant, in the appeal at Number 287 April Term, 1975, he neglected to sign and affix his seal to it. Appellant filed his motion to suppress in the case at 287 April Term, 1975, on the grounds not only that the affidavit was invalid because it wasn't signed and sealed by the magistrate but also that there was no proper jurat for the magistrate to sign and seal and that the magistrate had not signed the issuance of the warrant. The Commonwealth then moved to amend the affidavit and warrant. The court below after a hearing allowed the amendment and permitted the magistrate to sign and seal the affidavit-warrant.

Under our ruling in *Commonwealth v. McAfee*, 230 Pa. Superior Ct. 336, supra, had the Commonwealth in the instant case not amended, the appellant's motion to suppress would prevail. The Commonwealth claims it had the right to amend, with leave of court, under the provisions of the Pennsylvania Rules of Criminal Procedure particularly in the light of Rule 150. Rule 150 provides as follows:

"Rule 150. Defects in Complaint, Citation, Summons or Warrant
(a) Informal Defects:
　　No person arrested under a warrant or appearing in response to a summons or citation shall be

discharged from custody nor shall any case be dismissed because of any informal defects in the complaint, citation, summons, or warrant, but the complaint, citation, summons or warrant, may be amended at any time so as to remedy any such informality.

(b) Substantive Defects:

If a complaint, citation, summons or warrant contains a substantive defect, the defendant shall be discharged unless he waives the defect. Nothing in this rule shall prevent the filing of a new complaint or citation and the issuance of process in which the defect is corrected in a proper manner."

The rule expressly provides for the amendment of informal defects in the warrant of which the affidavit is a part. The *comment* to the rule says:

*"Comment:* 'Informal defect' refers to errors which do not prevent the substantive content of the document from being plainly understood.

Substantive defects would include those cases in which the defendant's identity cannot be determined or in which the offense is not properly described."

In the light of the comment did the defect prevent the substantive content of the document from being plainly understood? Gauged by one practical test no one did misunderstand the document. Looking to another test there was no reason not to understand the document. It contained a clear statement of facts showing probable cause for a search of Room 403 in the Sheraton Inn together with a warrant for such search. The appellant understood the warrant and so did the officers who executed it. Judged by another test there was no change in any of the substance of the document. There was no challenge to the warrant at the time it was executed. It was a de facto warrant and no prejudice resulted to the appellant because it wasn't signed and sealed.

The facts and circumstances establishing probable cause were an integral part of the warrant. The absence

of the magistrate's signature and seal did not allow any enlargement or change in these facts and circumstances after the fact of execution of the warrant simply because it wasn't signed by the magistrate. The trial court has discretion in the allowance of amendments under Rule 150 and we should not overrule the trial court unless there is a clear abuse of discretion. We find no abuse of discretion in this case.

Judgments of sentence affirmed.

CONCURRING AND DISSENTING OPINION BY SPAETH, J.:

This appeal comprises two cases, No. 287 and No. 342, both of the April Term 1975. The briefs, however, deal only with No. 287.[1] Since No. 342 was not briefed, and since my proposed holding in No. 287 would not disturb the lower court's judgment in No. 342, I shall discuss only No. 287, in which the facts are as follows.

A search warrant was issued on June 6, 1974, on J.P. Criminal Form 74-R2006. The warrant was executed on the same day and evidence was seized that led to a charge against appellant of operating a lottery. Appellant filed a motion to suppress on the ground that the search warrant was defective. On October 24, 1974, the motion was denied, and appellant was tried and convicted of operating a lottery. Post-trial motions were filed and denied, and this appeal followed.

Form 74-R2006 was prepared by the office of the Court Administrator of Pennsylvania in an effort to comply with the Pennsylvania Rules of Criminal Procedure regarding search warrants. Pa.R.Crim.P.

---

1. On April 7, 1975, appellant's petition to consolidate No. 287 and No. 342 was, with the consent of opposing counsel, granted. The order stated that only one brief was required. While such an order means that a separate brief need not be submitted for each case, the one brief must deal with both cases. One brief dealing with only one case is not sufficient, for it gives us no basis on which to decide the unbriefed case.

2001-2010. Rule 2006 sets forth two sample forms, one for the application for the search warrant, and one for the warrant itself. Form 74-R2006 is not an exact duplicate of the samples, nor must it be, for Rule 2006 requires only that "[e]very application for a search warrant" and "[e]very search warrant" shall be "substantially" in the same form as the samples.

According to the forms set forth in Rule 2006, the issuing authority is to sign his name and impress his seal twice: at the end of the application for the warrant, and at the end of the warrant itself.[2] Form 74-R2006, however, combines the application for the warrant and the warrant into a one-page form, and provides only one place for the signature and seal of the issuing authority — at the bottom of the page, *i.e.*, at the end of the warrant.

I

Appellant contends that since the signature and seal of the issuing authority are at the end of the warrant, they cannot function as a jurat for the application. Therefore, appellant reasons, the recitation of probable cause in the affidavit is unsworn, and the warrant must be held defective as inadequately supported.

The requirements for a valid search warrant are found in the Fourth Amendment of the United States Constitution; Article I, Section 8 of the Pennsylvania Constitution; Pa.R.Crim.P. 2003; and Section 1991 of the Statutory Construction Act of 1972, Act of Nov. 25, 1970, P.L. 707, No. 230, added Dec. 6, 1972, P.L. 1339, No. 290, §3, 1 Pa. C.S. §1991 (definition of "Affidavit"). I agree with the majority that the requirement of only one

---

2. In some circumstances the rule contemplates a third signature. Thus it provides that "[i]f issuing authority finds reasonable cause for issuing a nighttime warrant ..., this following [separate form, signed and sealed by the issuing authority] must be additionally completed."

signature and seal by the issuing authority is not by itself so violative of these provisions as to necessitate invalidation of Form 74-R2006 and the consequent suppression of the seized evidence.

I nevertheless suggest that the lack of a separate jurat immediately beneath the signature of the applicant for the warrant is troublesome enough to require that issuing authorities discontinue use of Form 74-R2006 and use instead a form providing for such a separate jurat. If no such form is yet available, they should insert such a jurat on Form 74-R2006.

One danger of Form 74-R2006 is that the person who provides the information establishing probable cause to search may not personally appear before the issuing authority to swear to his statements, as required by the constitutional and statutory provisions and by the rules. The place for the issuing authority's signature and seal is immediately after the following statement:

> "WHEREAS, facts have been sworn to or affirmed before me by *written* affidavits attached hereto ...." (Emphasis supplied.)

An applicant or issuing authority who does not carefully read the entire form may mistakenly believe that submission of written affidavits can substitute for personal appearance.

Another danger of Form 74-R2006 is that the issuing authority may not understand that he must perform two distinct acts, the first of which is a prerequisite to the second. First, he must administer an oath to the applicant, who must swear that the statements in his application for the warrant are true. Second, he must determine whether the affidavit as thus completed provides probable cause to search; if it does, he must sign, seal, and issue the warrant. *See* Comment (a) to Pa.R.Crim.P. 2003.

Form 74-R2006 has already caused confusion in some

courts[3] and some district attorneys' offices. At least one district attorney — the district attorney of Dauphin County — has sent a memorandum to Dauphin County authorities suggesting that they add a jurat to the application for the warrant. On November 25, 1974, the office of the Court Administrator sent a memorandum to all president judges, district justices of the peace, district attorneys, court administrators, and form printers informing them of the Dauphin County district attorney's suggestion. This memorandum, however, only recommended "such action as you deem appropriate;" it did not direct the addition of the jurat. Beyond this, no further official action has been taken.

I therefore respectfully suggest that Form 74-R2006 be officially revised to include a jurat at the end of the application for the warrant. Any further difficulties could be avoided by duplicating the forms set forth in Rule 2006.

## II

The case does not end there, however. Appellant also contends, and the majority agrees, that not only was there no jurat on the application for the warrant, but there was none on the form at all. According to the majority, before the suppression hearing the Commonwealth moved to amend the application and warrant, whereupon an amendment hearing was held during which the magistrate signed and sealed the form for the first time. If this is so, I cannot agree with the majority that such an amendment was permissible.

---

3. *See*, for example, *Commonwealth v. Miller*, 240 Pa. Superior Ct. 750 (1976); *Commonwealth v. Gingrich*, No. 94 September Term, 1974 (Cumberland County, 1974).

-A-

In *Commonwealth v. McAfee*, 230 Pa. Superior Ct. 336, 326 A.2d 522 (1974), the application for the warrant, which was on a form separate from the warrant, had no issuing authority's jurat. In holding that defect fatal to the warrant, we said:

> "[I]t has never been the law that anything less than a written oath or affirmation is acceptable under the Pennsylvania Constitution.... The provision in the constitution that the warrant be 'supported by oath or affirmation subscribed to by the affiant' implies that there be some written record of the fact that the affiant was in fact sworn to which he can subscribe. Mere oral testimony that the affidavit upon which the warrant issued was made under oath would not comply with this clause. Any other interpretation would render the constitutionally provided safeguard meaningless." *Id.* at 339, 326 A.2d at 523.

Thus, if here no written record of the oath appeared on the warrant at the time it issued, neither later testimony by the magistrate that an oath was administered, nor a post-issuance addition of the jurat, could validate the warrant. *See Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973), where the Supreme Court held that after the new search warrant rules were promulgated,[4] only the written record prepared contemporaneously with the issuance of the warrant may be offered in support of the warrant.

The majority's reliance on Pa.R.Crim.P. 150 to provide a basis for the amendment of the warrant is misplaced. Rule 150 applies only to complaints, citations, summonses and *arrest* warrants. That search warrants are not covered by the rule is clear both from the

---

4. Pa.R.Crim.P. 2000-2010 were adopted March 28, 1973, and became effective sixty days thereafter.

wording of the rule,[5] and from its placement in the chapter entitled "Procedure in Court Cases," rather than in the chapter entitled "Search Warrants."

### -B-

This leaves us with the question of whether in fact the warrant was issued without a jurat. I do not think the record adequate to answer this question.

Although the lower court's opinion and appellant's brief support the majority's view of the facts, the Commonwealth's brief says that the warrant was signed at issuance, and that at the amendment hearing the magistrate added a *second* jurat. The Commonwealth cannot be correct, for the warrant, which is in the record, shows only one jurat. The record does not show, however, when that jurat was placed on the form. Indeed, the record does not even show whether an amendment hearing was held. The only mention in the record of an amendment is a brief, unexplained comment by the assistant district attorney at the suppression hearing that "this is one of the affidavits that has been amended." There are no notes of testimony from the alleged amendment hearing, nor is there any docket entry showing that such a hearing was held.

In these circumstances I would remand for an evidentiary hearing to determine when the jurat was placed on the warrant. If the warrant was signed and sealed at issuance, then the judgment of the lower court should stand. If the jurat was added after issuance, however, the lower court should vacate the judgment of sentence and order the evidence seized pursuant to the warrant suppressed.

HOFFMAN, J., joins in this opinion.

---

5. Rule 150 begins, "No person *arrested* under a warrant ...." (Emphasis added.)