389 A.2d 654

COMMONWEALTH of Pennsylvania, Appellant,

v.

Matthew SWINT.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Diane SWINT.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Rodney ISAACS.

Superior Court of Pennsylvania.

Argued Dec. 12, 1977.

Decided July 12, 1978.

Eric B. Henson, Assistant District Attorney, Philadelphia, with him F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellant.

James Peruto, Philadelphia, for appellee, Matthew Swint.

Ricki Sanders, Philadelphia, for appellees, Diane Swint and Rodney Isaacs.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This an appeal by the Commonwealth from an order granting appellants' suppression motions.[1] Excluded from evidence were 128 glassine packets and one brown bag containing a tan powder determined to be heroin. These items were seized pursuant to a search warrant. Also suppressed were a bail slip and a notice to appear in the name of Matthew Swint, an envelope addressed to Mrs. D. Swint, and the statement of Matthew Swint to Officer Dennis Carroll when Swint entered the dwelling being searched and asked, "What are you guys doing in my house?"

At 1:05 p. m. on July 16, 1976, Officer Dennis Carroll entered a house at 2706 Federal Street, Philadelphia, under the authority of a search warrant signed by Judge J. Earl Simmons of the Philadelphia Municipal Court. Appellants Diane Swint and Rodney Isaacs were found in the third floor front bedroom. A search of that bedroom yielded four bundles of glassine packets containing a tan powder, which were wrapped in a rubber band, on top of the chest of drawers. Tin foil containing two more bundles of glassine packets was discovered on the top shelf of the bedroom closet. A total of 128 glassine packets containing the tan powder were seized. Also taken was a cardboard box with a number of empty glassine packets inside. Additional items found on top of the chest of drawers included the bail slip, the notice to appear and the addressed envelope. In the

1. It is clear that the suppression order in this case would either terminate or substantially handicap the prosecution. There is thus no question as to the propriety of the Commonwealth's appeal. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

kitchen, Officer Carroll discovered a paper bag containing more of the tan powder.

The lower court's order of suppression was based on the fact that the issuing authority, Judge Simmons, had written a date on the search warrant when he signed it which was one day earlier than the date of the affiant's application for the warrant. On this ground the court held that the search warrant was "patently defective on its face in that it could not lawfully be issued before it was applied for." This finding, however, does not go far enough.

The warrant affidavit states that Officer Carroll received information on July 15, 1976, about drug sales at 2706 Federal Street. During the afternoon of the same day, the officer conducted a surveillance of the house. On the basis of the facts known from his informant and his observations during the surveillance, Officer Carroll applied to Judge Simmons for a search warrant on July 16, 1976. The time of issuance noted on the warrant is 12:10 p. m., and the warrant was executed at 1:05 p. m. on July 16, 1976. At the suppression hearing, Officer Carroll testified to these same facts.[2] He specifically stated that the warrant was obtained, signed by Judge Simmons and executed on July 16, 1976. (R 25a, 34a, 35a). The suppression court did not determine or even suggest that the warrant herein was signed in blank by the issuing authority and filled in at a later time. There is nothing in the record to intimate any such impropriety. The only explanation which remains, then, is that the issuing authority inadvertently affixed the wrong date to the warrant. It is the legal effect of such an inadvertent error which must be determined.

Pa.R.Crim.P. 2005 requires, *inter alia*, that a search warrant shall specify the date and time of its issuance. Pa.R.Crim.P. 2003 provides, in pertinent part, as follows:

2. At R 26a in the notes of testimony, July 15 is mentioned as the date of the surveillance. At that point in the hearing, however, Officer Carroll was reading from the warrant, which dates the surveillance on the 16th. This conflict is apparently the result of either a misstatement by the officer or a recording error. The date of the surveillance is well-established later in the proceeding. (R 34a, 35a).

(a) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

(b) At any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible *to establish probable cause* other than the affidavits provided for in paragraph (a). (Emphasis added).

Thus although Rule 2003 proscribes consideration of evidence outside the warrant affidavits on the issue of probable cause,[3] this limitation does not extend to other aspects of the warrant. The Rule did not compel the suppression court nor does it constrain this court to ignore Officer Carroll's unchallenged testimony that the warrant was sought, issued and executed all on July 16, 1976.

This court has distinguished situations involving warrants with minor typographical errors from those where errors or omissions have threatened fourth amendment protections. In *Commonwealth v. Chinea*, 246 Pa.Super. 494, 371 A.2d 944 (1977), the issuing magistrate omitted the month and inadvertently entered the year twice in dating the warrant, so that it read "this 18th day of 1975, 1975 . . . ." 246 Pa.Super. at 496, 371 A.2d at 945. It was held that "[t]he omission of the month from the date of issuance of the warrant does not deprive either the suppression court or this Court of the requisite information to determine that the warrant was properly issued and executed . . . ." 246 Pa.Super. at 497, 371 A.2d at 946.[4]

**3.** The Supreme Court of Pennsylvania announced its intention to formulate this rule in *Commonwealth v. Milliken*, 450 Pa. 310, 314, 300 A.2d 78, 81 (1973), where it expressed its "preference for reducing to writing in some acceptable manner *sworn oral testimony offered in support of the issuance of the search warrant*." (Emphasis added).

**4.** See also *Commonwealth v. Wilds*, 240 Pa.Super. 278, 362 A.2d 273 (1976) (fact that affiant inadvertently signed his name in the space

*Chinea* may be contrasted with such cases as *Commonwealth v. Williams*, 237 Pa.Super. 324, 352 A.2d 67 (1975), and *Commonwealth v. McAfee*, 230 Pa.Super. 336, 326 A.2d 522 (1974). In *Williams* and *McAfee*, the defect was the absence of the magistrate's signature and seal on the warrant affidavit. As the court in *Commonwealth v. McAfee* observed, "it has never been the law that anything less than a written oath or affirmation is acceptable under the Pennsylvania Constitution. . . . The provision in the constitution that the warrant be 'supported by oath or affirmation subscribed by the affiant' implies that there be some written record of the fact that the affiant was in fact sworn to which he can subscribe." 230 Pa.Super. at 339, 326 A.2d at 523 (1974).

The misdating by the issuing authority in this case, like the error in *Commonwealth v. Chinea, supra,* did not leave the suppression court or this court unable to review the propriety of the issuance and execution of the warrant. "[S]earches conducted pursuant to warrants are to be favored over warrantless searches and thus '. . . must be tested with a common-sense, nontechnical, ungrudging and positive attitude . . . .' *Commonwealth v. Conner,* 452 Pa. 333, 340, 305 A.2d 341, 345 (1973)." *Commonwealth v. Wilds,* 240 Pa.Super. 278, 286, 362 A.2d 273, 277 (1976). Appellants were in no way prejudiced by the inadvertent error herein, and we perceive no reason why they should enjoy the windfall of suppression of the evidence against them on the mere basis of an overly technical interpretation of our Rules of Criminal Procedure.

We reverse the order of December 30, 1976, and remand for further proceedings.

labeled "Signature of Person Seizing Property" rather than that provided for "Signature of Affiant" not fatal defect); *Commonwealth v. Lardo*, 240 Pa.Super. 107, 368 A.2d 324 (1976) (warrant signed and sealed by magistrate in only one place rather than, as typical, on both jurat and issuance of warrant, was not defective under the circumstances).

SPAETH, J., files a concurring and a dissenting opinion in which HOFFMAN, J., joins.

VAN der VOORT, J., dissents.

WATKINS, former President Judge did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring and dissenting:

I join Judge PRICE's analysis, that Rule 2003 proscribes consideration of evidence outside the four corners of the warrant only on the issue of probable cause. Thus, the lower court was free to make, and should have made, a finding of fact on whether the issuing authority had, or had not, misdated the warrant. The difficulty is that the lower court did not realize this, thinking it was bound by what appeared to be the date on the warrant, and therefore made no finding. This does not trouble Judge PRICE, who makes the finding himself—saying that there is no reason to reject Officer Carroll's testimony, and that the "only explanation" must be "that the issuing authority inadvertently affixed the wrong date." Majority Opinion at 172, 389 A.2d at 656. I have very little doubt that Judge PRICE's finding is right, but it is not our business to make findings.

I should therefore remand for further proceedings.

HOFFMAN, J., joins in this opinion.