458 A.2d 204

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Norma Jean CHANDLER.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James CHANDLER.**

Superior Court of Pennsylvania.

Submitted May 20, 1982.

Filed March 18, 1983.

Petition for Allowance of Appeal Granted Sept. 7, 1983.

1

2

Daniel Lucian Chunko, Assistant District Attorney, Washington, for Commonwealth, appellant.

Robert C. Brady, Washington, for appellees.

Before ROWLEY, MONTEMURO and VAN der VOORT, JJ.

ROWLEY, Judge:

■ These are consolidated appeals by the Commonwealth [1] from two orders suppressing evidence seized during a search of appellees' home on the ground that defects in the issuance of the search warrant vitiated the validity of the ensuing search. These two cases were consolidated because they arise from identical facts and present identical issues.

■ When we review an order suppressing evidence, we are not bound by the trial court's conclusions of law. We are bound, however, by the court's findings of fact if those findings are supported by the record. *See e.g., Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Webb*, 491 Pa. 329, 421 A.2d 161 (1980); *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980); *Commonwealth v. Williams*, 287 Pa.Super. 19, 429 A.2d 698 (1981). The courts of this Commonwealth have therefore "refused" "time and again" to substitute their own findings for those of the suppression court, *Commonwealth v. Davis, supra*, 491 Pa. at 368, 421 A.2d at 181, especially where credibility is at issue, *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4 (1981); *Commonwealth v. Butch*, 257 Pa.Super. 242, 390 A.2d 803 (1978) [court equally divided on other grounds], *remanded on other grounds*, 487 Pa. 30, 407 A.2d 1302 (1979). Mindful of this scope of review, we now turn to a discussion of the facts which, in this case, are not the subject of any serious dispute.

■ On January 27, 1981, at some time after 11:00 P.M., Trooper Richard L. Pompei of the Pennsylvania State Police Region Five Narcotics Strike Force appeared before District Justice Clyde Tempest of Mongahela, Pennsylvania, then on

1. It is apparent from the records in these cases that the orders of the trial court suppressing the evidence will effectively terminate or substantially handicap the prosecution. Therefore, these appeals are properly before our court, *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). The Commonwealth's claim that the suppression orders effectively terminate the prosecution is not contradicted by the appellees.

duty as the night magistrate, for the purpose of obtaining a search warrant. The trooper had prepared a one-page application form which was in substantially the form required by Pa.R.Crim.P. 2006(a). On the application, the trooper had typed information identifying the premises to be searched as the residence of the appellees, setting forth its address and a description of the dwelling. He also identified the items to be searched for and seized as a variety of drugs and drug-related paraphernalia. The trooper had also completed a lengthy affidavit of probable cause setting forth his investigative efforts with respect to Appellee James Chandler's suspected activities as a dealer in narcotics and other controlled substances. Trooper Pompei set forth information obtained from two confidential informants and details allegedly supporting the reliability of the information obtained from them. One of these informants was alleged to have given reliable information on previous occasions which led to three convictions and had also personally obtained from James Chandler a quantity of a substance which, upon later chemical analysis, turned out to contain Pentazocine, a controlled substance under Schedule IV of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L.233, No. 64, as amended, 35 P.S. § 780–101 et seq., and the regulations of the Secretary of Health promulgated thereunder, 28 Pa. Code § 25.72(e)(2)(ii). Trooper Pompei's affidavit was set forth in part on the application form, but the greater part of the affidavit was contained on two additional typed pages which were attached to the form.

After presentation of the application for the warrant, District Justice Tempest administered an oath to Trooper Pompei and, while under oath and in the presence of the District Justice, Trooper Pompei swore to the truth of the factual content of the application and signed his name both to the bottom of the printed form in the space provided and at the end of the affidavit, i.e. at the end of the second additional typed page. District Justice Tempest then also signed the bottom of the printed form near the Trooper's

signature and at the end of the affidavit, imprinting his seal in each place as well.

Despite the meticulous care otherwise shown, Trooper Pompei and District Justice Tempest then committed what the suppression hearing judge aptly called "a single fantastic error": the issuance section of the application, which appears on the back of the pre-printed form, was left entirely blank. This section of the form is in substantial compliance with Pa.R.Crim.P. 2006(b). None of the blanks in this section were filled in: no date or time of issuance was specified, no date beyond which the search could be conducted was indicated and the District Justice neither signed in the space provided nor did he affix his seal upon it.

Believing that all was in order, however, Trooper Pompei, accompanied by Troopers Donald Ross and Anthony J. Perella, also members of the Region Five Strike Force, went to appellees' home with the executed documents at approximately 7:50 A.M. on January 28, 1981, barely eight hours after leaving the office of District Justice Tempest. Both appellees were present during the search which resulted in the seizure of several quantities of controlled substances including Talwin, Tuinal and marijuana. The troopers thereupon arrested the Chandlers.

After completing the search and seizing the substances the troopers filled out a form entitled "Receipt/Inventory of Seized Property," describing the material seized and its location when found in the Chandler home. This form was later presented to a different magistrate, District Justice J. Albert Spence, of Washington, Pennsylvania. Trooper Pompei was again placed under oath and the facts concerning the property seized represented on the form were sworn to and the form signed by the trooper.[2] The Receipt/Inven-

2. In its brief the Commonwealth also states as fact that:
   After the search and seizure of the fruits thereof, Trooper Pompei made a return of the search warrant and inventory to the issuing authority. The result of search section of the search warrant was duly signed by Trooper Pompei .... The District Justice who issued the search warrant, Clyde Tempest, Esq., also signed and

tory was also signed and sealed by District Justice Spence. After a preliminary hearing, the appellees were held for court on charges of possession and possession with intent to deliver the various substances seized.

Both appellees subsequently filed motions to suppress the evidence on the grounds that (1) no probable cause existed for the issuance of the search warrant and (2) the search warrant was defectively issued. The suppression court, while commending the thorough efforts of Trooper Pompei and his fellow officers, ruled that the omissions of the District Justice violated Pa.R.Crim.P. 2005[3] and required that the evidence be suppressed. In his opinion, the suppression hearing judge, the Honorable John F. Bell, made

sealed the result of search section. (Brief for the Commonwealth, p. 7.)

Appellees do not contest this statement's accuracy. However, we have no confirmation of its accuracy in the record. The suppression hearing was concluded before Trooper Pompei could testify completely. The only "result of search" section appears as an exhibit in the reproduced record. (R.R., p. 42a.) It is a photocopy of the District Attorney's carbon copy of the application and affidavit form. This photocopy is not of good quality and the date apparently associated with District Justice Tempest's signature is not legible. Furthermore, the time when this signature and its accompanying seal were placed on the page is not apparent from the photocopied carbon. If in fact the Trooper did make this second trip to Monongahela, it would support the inference that District Justice Tempest intended to issue and believed he had in fact issued a search warrant to the officer. If the troopers did not make this second trip, however, this inference would not be quite so strong. We leave this determination to the suppression judge on remand.

3. Rule 2005 reads as follows:
Each search warrant shall:
(a) specify the date and time of issuance;
(b) identify the property to be seized;
(c) name or describe with particularity the person or place to be searched;
(d) direct that the search be executed within a specified period of time, not to exceed two (2) days from the time of issuance;
(e) direct that the warrant be served in the daytime unless otherwise authorized, provided that, for purposes of the Rules of Chapter 2000, the term "daytime" shall be used to mean the hours of 6 a.m. to 10 p.m.;
(f) designate by title the judicial officer to whom the warrant shall be returned.

known his "distaste for the result" he reached, adding that he was "almost disgusted" that the "mistake" here made called for "the suppression of evidence that would, undoubtedly, result in conviction." But Judge Bell felt that he had no discretion to allow the Commonwealth an opportunity to amend under Pa.R.Crim.P. 150.[4] Rather, he concluded that the decisions of this court in *Commonwealth v. McAfee*, 230 Pa.Super. 336, 326 A.2d 522 (1974) and *Commonwealth v. Belcher*, 258 Pa.Super. 153, 392 A.2d 730 (1978), *required* that the evidence be suppressed. For the reasons which follow, we disagree and vacate the orders entered in these cases and remand for further proceedings.

Unlike the trial court, we find this case to be controlled by *Commonwealth v. Lardo*, 240 Pa.Super. 107, 368 A.2d 324 (1976). There, this court heard two consolidated appeals which challenged two search warrants alleged to be defective. The form used by the magistrate in each case contained a combined issuance and affidavit section which provided space sufficient for the magistrate to sign and affix his seal to the form only once. As the trial court in this case correctly noted, in the first challenge in *Lardo*, the defendant asserted that the single signature and seal was insufficient to serve for both the affidavit and the warrant. This court rejected that argument. *Id.*, 240 Pa.Superior at 112–115, 368 A.2d at 326–328.

However, it is the second challenge in *Lardo*, one not discussed by the trial court here, which is more germane to the case at hand. In that challenge, the affidavit-warrant form had not been signed *at all*. The trial court had permitted the Commonwealth, after a hearing, to amend the form by having the magistrate supply the missing information necessary to cure the defect. This court, after a review of the warrant and the surrounding circumstances, affirmed. *Id.*, 240 Pa.Superior at 115–116, 368 A.2d at

**4.** Rule 150 provides in pertinent part:
No person ... shall be discharged nor shall any case be dismissed because of any informal defects in the complaint, citation, summons or warrant, but the complaint, citation, summons or warrant, may be amended at any time so as to remedy any such informality.

8

328–329. Speaking for the court, Judge Van der Voort stated:

> Gauged by one practical test no one did misunderstand the document. Looking to another test there was no reason not to understand the document. It contained a clear statement of facts showing probable cause .... The appellant understood the warrant and so did the officers who executed it. Judged by another test, there was no change in any of the substance of the document [upon completion of the amendment]. There was no challenge to the warrant at the time it was executed. *It was a de facto warrant and no prejudice resulted to the appellant because it wasn't signed and sealed. Id.*, 240 Pa.Superior at 116, 368 A.2d at 329. (Emphasis added.)

The court concluded that the decision whether or not to allow an amendment to cure such errors was largely committed to the discretion of the trial court. *Id.*, 240 Pa.Superior at 117, 368 A.2d at 329.

Cases cited by the Commonwealth add further support for our conclusion, as they deal with the appropriate approach to errors and omissions in the completion of the issuance section of search warrant application forms. In *Commonwealth v. Chinea*, 246 Pa.Super. 494, 371 A.2d 944 (1977), the magistrate inadvertently omitted the month from the date of issuance. This court concluded, after examining the other sections of the warrant, that it was clear that the magistrate intended to enter "November" as the month of issuance. Since omission of the month from the date of issuance, although a violation of Rule 2005, did not deprive the court of the information needed to determine that the warrant was properly issued and executed, it was held that the evidence seized pursuant to the warrant should not have been suppressed. In *Commonwealth v. Swint*, 256 Pa.Super. 169, 389 A.2d 654 (1978), the magistrate inadvertently entered July 15, 1976, as the date of issuance. This was one day earlier than the date of the application, which led the trial court to conclude that the warrant was patently defective and therefore invalid. In reversing the suppres-

sion order, this court held that although Pa.R.Crim.P. 2003 proscribes consideration of evidence outside the warrant affidavit on the issue of probable cause, this limitation does not extend to other aspects of the warrant. Therefore, it was held that the trial court should have considered the officer-affiant's unchallenged testimony that the warrant was actually issued on July 16, 1976.

It is true that this case involves more than merely the typographical errors addressed in *Chinea* and *Swint.* However, the trial court in this case concluded that it was precluded from exercising its discretion or permitting *any* amendment of the warrant. This was an erroneous conclusion. The court, as a result, did not consider whether the as yet unchallenged testimony of Trooper Pompei served to supply any of the information missing from the printed form. We think it clear that the Commonwealth may possess sufficient evidence to permit the amendment of the warrant and the filling in of the missing information.

We also note that the trial court's reliance upon *Belcher* and *McAfee* is misplaced. First, in *McAfee,* there was no written record that the officer-affiant had in fact been placed under oath prior to the signing of his affidavit of probable cause. Unlike the warrants in *Lardo* and in this case, the affidavit and the warrant were on totally separate pieces of paper. In this case, the requirements of *McAfee* have been met. That case, therefore, does not *require* the result reached by the trial court here. Furthermore, the court in *Lardo* distinguished *McAfee,* refusing to apply it in a factual context more closely resembling the case at bar. *See Lardo,* 240 Pa.Super. at 114, 368 A.2d at 327–328.

Second, an *en banc* panel of this court has recently overruled *Commonwealth v. Belcher,* holding that the requirement of Pa.R.Crim.P. 225(b) that the district attorney sign an information is directory only, and that the absence of such a signature, raised in a pre-trial motion, is curable by amendment. *Commonwealth v. Veneri,* 306 Pa.Super. 396, 404, 452 A.2d 784, 788, (1982). In so doing, Judge Cavanaugh, writing for a unanimous en banc panel, ex-

plored the concerns relevant to a judicial examination of the government's action in cases of noncompliance with the formal requirement of the Rules of Criminal Procedure. First, the courts must be able to identify the participants as governmental officers with the requisite authority to engage in the activities undertaken. *Id.*, 306 Pa.Superior at 400–403, 452 A.2d at 786–787. For example, in *Veneri*, the court was concerned with whether the decision to file an information was made by a person possessing the requisite authority to do so. In the case at bar, we are concerned with whether the person who applied for the warrant and the person who authorized the search had the authority to do so. Second, the formal requirements of the rules have been imposed to insure that the agents of the government proceed only with the full cognizance of the seriousness of their actions, including the harshness of the possible .adverse consequences. *Id.*, 306 Pa.Superior at 401–403, 452 A.2d 786–787. In addition to these observations by Judge Cavanaugh, we note that the formal requirements are intended to provide a uniform method of protecting the Constitutional rights of those suspected of criminal activity.

However, we wish to emphasize that there is in this case no violation of any right or privilege of *Constitutional* dimension. Article I, section 8 of the Constitution of the Commonwealth of Pennsylvania and the Fourth Amendment to the Constitution of the United States prohibit only "unreasonable" searches. There is no unreasonableness involved here. Trooper Pompei went to an impartial and detached magistrate and presented a thorough and detailed statement of the facts which he believed constituted probable cause for the issuance of the search warrant. Apparently concluding that probable cause existed, the District Justice administered the oath to the officer who swore to the truth of both the affidavit and the application and signed his name to each. The District Justice then signed his name in two different places and twice affixed his seal of office. The papers were then served and the search was conducted approximately eight hours after Trooper Pompei

left the District Justice's office. There is no allegation that this warrant was stale nor is there any charge that the troopers carrying out the search conducted themselves improperly in any way while at the Chandlers' home. The Receipt/Inventory was filled out, sworn to under oath and signed by Trooper Pompei before District Justice Spence who signed his name to the forms and affixed his seal thereto, all on the same day that the search was carried out.

Nor can we perceive that the appellees were denied the protection of any other provision of the law to which they may legitimately lay claim. The substantive protections established by Rule 2005 were afforded to appellants. Trooper Pompei's testimony at the suppression hearing, thus far uncontradicted, and the warrant application form establish the date and time of issuance of the warrant as required by Rule 2005(a). The application also set forth information conforming to the requirements of Rule 2005(b) and (c), describing the property to be seized and the name of the person and place to be searched. We note that even had the issuance section of the form been filled out, it would not have, within itself, contained the information required by Rule 2005(b) and (c). The issuance section directs interested parties to read the application materials to obtain this information. Furthermore, the warrant was executed well within the two-day time limit of Rule 2005(d) and during the daytime pursuant to Rule 2005(e). Finally, the officers made a return before a judicial officer shortly after the completion of the search in accordance with Rule 2005(f).

Almost all of the technical requirements of the Criminal Rules were fulfilled. The application for the warrant, the affidavit of probable cause and the Receipt/Inventory were completed in comprehensive and even painstaking detail. The purposes to be served by these formal requirements were met: the applicant and the issuing authority are readily identified as governmental agents acting within the scope of their authority and with full cognizance of the

significance of the occasion and with due respect for the constitutional rights of the appellees.

It is clear to us, and the trial court so found, that Trooper Pompei intended to obtain and District Justice Tempest intended to issue a warrant for the search of the appellees' home. The pre-printed form was not completed in every detail as a result of "mistake" or "oversight" rather than as a result of any deliberate decision or misconduct on the part of the trooper or the magistrate. Furthermore, all of the parties, including appellees, understood what was said on the papers and understood the documents to authorize the search that was conducted. As in *Commonwealth v. Lardo*, 240 Pa.Super. at 116, 368 A.2d at 329, the form in this case can be construed to constitute a "de facto" warrant.

It is also clear to us that, given the admitted facts of this case, the absence of a signature, seal and dates does not, without more, prejudice the rights of the appellants. It would be unrealistic to hold that the errorless completion of the sample forms promulgated in the Criminal Rules constitutes the exclusive method of providing evidence of the deliberative acts of public officials necessary to comply with the formal requirements contained therein and that unintentional flaws in the process of completing these forms destroys the validity of an otherwise untainted process. Where the Commonwealth adduces sufficient evidence to show that there is no *substantive* defect in the warrant, its issuance or its execution, a *formal* defect in the warrant is relatively unimportant. To say that the magistrate in this case should have applied his seal and signed his name three times instead of only two is to exalt form over substance, to subscribe to "technical vanity" and to practice "judicial sleight of hand of totally unacceptable proportions." *Commonwealth v. Veneri*, 306 Pa.Super. at 405, 452 A.2d at 788.

To adopt appellees' argument in support of the trial court's order suppressing the evidence would require us to hold that a technical and formalistic violation of the Pennsylvania Rules of Criminal Procedure concerning the is-

suance of a search warrant requires the application of an "exclusionary rule" similar to that used in cases involving violations of the Fourth Amendment. We decline to so hold. We are not directed to any authority supporting this argument and we deem it inappropriate to adopt such a rule for this type of inadvertent error. Justice Powell, speaking for the United States Supreme Court in *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619–620, 38 L.Ed.2d 561 (1974), explained the purpose behind the Constitutional exclusionary rule: [5]

> The exclusionary rule was adopted to effectuate the Fourth Amendment .... The purpose of the exclusionary rule is not to redress the injury to privacy of the search victim .... Instead the rule's prime purpose is to *deter future unlawful police conduct* and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures:
>
>> The rule is calculated to prevent not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it. *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed2d 1669 (1960). (Emphasis added; some citations and quotations omitted.)

Furthermore, in a context similar to the one now before us, our own Supreme Court has stated:

> A rule of exclusion is properly employed where the objection goes to the reliability of the challenged evidence or reflects intolerable government conduct which is wide-

**5.** We note that currently pending before the United States Supreme Court is a case in which the Court has apparently decided to reconsider the scope of the Constitutional exclusionary rule. The Court has requested the parties to address the question:

> [W]hether the rule requiring the exclusion of evidence obtained in violation of the Fourth Amendment ... should to any extent be modified, so as, for example, not to require the exclusion of evidence obtained in the reasonable brief that the search and seizure at issue was consistent with the Fourth Amendment. *Illinois v. Gates,* 459 U.S. 1028, 103 S.Ct. 436, 74 L.Ed.2d 595 (1982).

We express no opinion on this issue nor its applicability nor its application to the case before us.

> spread and cannot otherwise be controlled .... [T]he precedures for the execution and return of the warrant are ministerial and the irregularities should not void an otherwise valid search absent a showing a prejudice. *Commonwealth v. Musi,* 486 Pa. 102, 115–116, 404 A.2d 378, 384–385 (1979). (Citations omitted.)

We cannot emphasize strongly enough that there has here occurred no unlawful or reprehensible conduct on the part of the government. The applicable Federal and State constitutional protections and the substance of the Rules of Criminal Procedure were fully respected. Additionally, the error here committed in no way affects the reliability of the challenged evidence. There is nothing gained, therefore, by excluding the evidence seized during this search except, perhaps, inducing police officers and district justices to focus greater attention on their clerical duties. In this regard, we are guided by the recent expression of a panel of the United States Court of Appeals for the Eleventh Circuit:

> Whether exclusion of evidence is appropriate in a particular proceeding depends upon whether the deterrent effect of the sanction outweighs the cost to society of suppressing relevant evidence. *Donovan v. Sarasota Concrete Co.,* 693 F.2d 1061, 1070 (11th Cir.1982).

In this case, the Commonwealth would lose the opportunity to present considerable, highly relevant if not damning evidence of serious violations of the drug laws. Society as a whole would, at least in a small way, lose the opportunity of cleansing itself of the harmful short and long term effects of the illegal traffic in illicit drugs. This cost to society far outweighs the benefits to be gained if indeed any benefits would be gained at all, from suppressing the evidence in this case.[6]

---

**6.** Further support for our conclusion is derived from the total absence of any provision for the enforcement of the directives of Rules 2005 and 2006. If the Pennsylvania Supreme Court had desired to impose so harsh a sanction as the exclusion of the evidence seized in technical violation of these rules, it would have done so. Cf. Pa.R.Crim.P. 1100(f) (explicit requirement for discharge for lack of a speedy trial as defined in the rule) and *Commonwealth v. Jones,* 245 Pa.Super. 487, 369 A.2d 733 (1977).

For all of the foregoing reasons, we conclude that the Commonwealth should have been permitted to amend the warrant in these cases in order to bring them into substantial conformity with the evidence and the Rules of Criminal Procedure. Since, however, the suppression hearing was adjourned before the Commonwealth completed its presentation of evidence and before the appellees had had an opportunity to present any rebuttal evidence or cross-examine any of the Commonwealth's witnesses and before the trial court made a final decision on the issue of probable cause, the hearing on remand should be completed and a final decision entered by the trial court on all issues raised by appellees in their pre-trial motions. We therefore vacate the order of the trial court in these cases and remand them for the purposes of completing the suppression hearing and such further proceedings not inconsistent with this opinion as may be necessary. At the appropriate time, the parties may, if they deem it necessary, seek appellate review of the trial court's determination of any other issues raised by the appellees' motions to suppress.

Orders vacated and cases remanded for further proceedings.

Jurisdiction relinquished.