477 A.2d 851

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Norma Jean CHANDLER, Appellant.**

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**James CHANDLER, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1984.

Decided May 25, 1984.

114

Robert C. Brady, Washington, for appellants.

John C. Pettit, Dist. Atty., William A. Johnson, First Asst. Dist. Atty., Washington, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

■ These are appellants' consolidated appeals by allowance from an order of Superior Court, 312 Pa.Super. 1, 458 A.2d 204, reversing a Common Pleas order suppressing evidence seized by the State Police in a search of appellant's

home.[1] Appellants argue that the Suppression Court correctly suppressed the fruits of a search of appellants' premises because the District Justice failed to issue a search warrant. The Commonwealth contends the District Justice clearly intended to issue a warrant when he took the policeman's oath to the affidavit of probable cause and his failure to sign the order issuing the warrant is a technicality which can be ignored. We hold that both our Pennsylvania Constitution and the federal Constitution require an order by the District Justice, as a judicial officer, and that his jurat on a policeman's affidavit of probable cause is no substitute for the judicial decision our Constitution requires for issuance of a search warrant. In the absence of an order by an independent judicial officer no search warrant could issue. Thus, the State Police's search in this case must be analyzed as one without warrant. As such, it can stand only if exigent circumstances are present. They are not. Indeed, there is not even an effort to show them. Under these circumstances, Common Pleas correctly suppressed the fruits of the search under the federally mandated exclusionary rule. Therefore, we reverse the order of Superior Court and reinstate the order of Common Pleas.

[I]n reviewing a suppression court's ruling the appellate court is bound by factual findings supported by the record. *Commonwealth v. Wiggins*, 472 Pa. 95, 371 A.2d 207 (1977); and, they may not substitute their own findings for those of the suppression court. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980). This principle of deference to trial courts has one important caveat however, appellate courts are not bound by findings wholly lacking in evidence. *Commonwealth v. Hall*, 475 Pa. 482, 380 A.2d 1238 (1977).

---

**1.** Superior Court properly exercised its jurisdiction over the Commonwealth's appeal from Common Pleas suppression order because the order effectively terminated the prosecution. *See Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, *cert. denied*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963).

*Commonwealth v. Hamlin*, 503 Pa. 210, at 215, 469 A.2d 137, at 139 (Opinion by Mr. Justice McDermott, in which Mr. Justice Flaherty and Mr. Justice Hutchinson join).

■ Considering the suppression record under that standard, the facts are: Trooper Pompei executed an application for a search warrant and an affidavit on a printed form denominated Search Warrant and Affidavit and presented it to District Justice Tempest on January 27, 1981 at 11:45 p.m. The form of the affidavit substantially complied with Pa.R.Crim.P. 2006. The application recited that the premises to be searched were those of James M. Chandler a/k/a "Jumbo" Chandler and that the items to be seized were narcotics, amphetamines and barbituates. Trooper Pompei's detailed affidavit was based on information received from two confidential informants. Trooper Pompei signed the affidavit and District Justice Tempest merely affixed his jurat to the affidavit on a printed line below large type stating "sworn to and subscribed before me." By doing so he only evidenced the policeman's recitation to him of those facts, under oath. He did not find them to be true nor conclude that they justified a warrant.

■ The District Justice's jurat was, of course, necessary to complete the affidavit itself. By definition, an affidavit is a statement of facts confirmed by oath before an officer having authority to administer the oath. The jurat is merely the certificate of the judicial officer stating that the affidavit was sworn to and subscribed by the affiant before him. Such a sworn statement before the District Justice or some other person authorized to administer oaths is necessary before the District Justice can consider the facts set forth to in it as evidence of the probable cause required to issue a warrant. *See* Pa.R.Crim.P. 2003.

■ Common Pleas determined that the information provided by those informants satisfied the mandates of *Aqui-*

*lar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We agree with that conclusion. The policeman's affidavit did contain facts which would have supported an independent finding of probable cause and the issuance of a warrant under either the strict *Aquilar-Spinelli* standard or the more practical standard recently articulated· by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), had the District Justice chosen to reach that conclusion. Indeed, appellant does not seriously dispute the Suppression Court's finding on that point. However, this record does not show the District Justice ever reached that conclusion. On the contrary, it shows he never entered an order issuing a warrant.

Beneath the District Justice's signature verifying the affidavit, printed in red bold-face block type are the words "ORIGINAL APPLICATION." By what may be an unfortunate format, the warrant itself is found on the reverse side of the "ORIGINAL APPLICATION" without identification in distinctive type. The printed form for the warrant is divided into two separate warrants, one for day searches and one for night searches. These forms were in substantially the form set forth by Pa.R.Crim.P. 2006. The form of warrant presented to District Justice Tempest is reproduced below:

| TO LAW ENFORCEMENT OFFICER: | WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person (described on the reverse side), and to seize, secure, inventory, and make return according to the Pennsylvania Rules of Criminal Procedure, the items described on the reverse side. |
|---|---|
| * | ⋈ |
| ☐ This Warrant should be served as soon as practicable but in no event later than _____ | ** ☐ This Warrant should be served as soon as practicable but in no event later than _____ |

☐ A.M. ☐ P.M. _____, 19__ and shall be served only during daytime hours of 6 A.M. to 10 P.M.

☐ A.M. ☐ P.M. _____, 19__ and may be served anytime during day or night.

Issued under my hand this _____ day of _____, 19__, at __.M. o'clock. (Issue time must be stated)

Issued under my hand this _____ day of _____, 19__, at __.M. o'clock. (Issue time must be stated)

(SEAL) _____

_____ (SEAL)

(Signature of Issuing Authority)

(Signature of Issuing Authority)

Mag. Dist. No. _____ Office Address _____ Phone No. _____

Date Commission Expires _____ Title of Issuing Authority

---

\* The issuing authority should specify a date not later than two (2) days after issuance: Pa.R.Crim.P. 2005(d).

\*\* If issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavits and wishes to issue a nighttime search warrant, only this section shall be completed. Pa.R.Crim. 2006(b).[2]

The day and night warrant forms themselves then include blanks for the District Justice to fill in to show the time within which the warrant must be served as well as a blank for his signature to the warrant itself. The blanks in both of these warrant forms were not filled in and neither warrant form was signed by the District Justice. Trooper Pompei testified that he did not check to see if the warrant was signed. Armed with the blank warrant, Trooper Pompei and two other officers searched the Chandlers' residence

**2.** Pa.R.Crim.P. 2005 provides that each search warrant shall:
 (a) specify the date and time of issuance;
 (b) identify the property to be seized;
 (c) name or describe with particularity the person or place to be searched;
 (d) direct that the search be executed within a specified period of time, not to exceed two (2) days from the time of issuance;
 (e) direct that the warrant be served in the daytime unless otherwise authorized, provided that, for purposes of the Rules of Chapter 2000, the term "daytime" shall be used to mean the hours of 6 a.m. to 10 p.m.
 (f) designate by title the judicial officer to whom the warrant shall be returned.
The information required by subsections (b) and (c) are incorporated by reference from the application.

and found quantities of controlled substances including talwin, tuinal and marijuana.

District Justice Tempest did not testify at the suppression hearing. We cannot know or infer that the District Justice intended to find probable cause and issue a warrant based on the affidavit and application. However, we do know that he made no record finding of probable cause and that he did not issue an order for a search warrant.

 It is not enough, absent exigent circumstances, that a policeman believe the facts he has are probable cause for a search warrant. The people of this state and nation are constitutionally entitled to an independent judicial determination of probable cause before they must open to the policeman's knock at the door in the night. *See Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Moreover, that determination must be made before and not after the search. The written affidavit of probable cause simply insures an accurate record of the verified (sworn) facts the issuing authority had when he made his determination before the event. *See* Pa.R.Crim.P. 2003(a), quoted *post* at p. 123, n. 4. Such a prior reduction to a written affidavit is of course particularly useful since stenographic records are not made in such matters before the District Justice.[3] The written affidavit also eliminates the unseemly necessity of calling the judicial officer himself to the stand in a swearing contest with the policeman to determine what each knew when. The facts in the affidavit, however, are not the District Justice's judgment. Indeed, they are only testimonial evidence of the facts themselves.

Reasonable judges and legal scholars may well differ over the technicalities of how best to memorialize the facts the issuer of the warrant had when he issued it and how technical courts should be in reviewing his decision to issue.

---

**3.** Thus, the comment to Rule 2003(a) states that the affidavit requirement does not preclude oral testimony before the issuing authority but that such oral testimony must be "reduced to an affidavit prior to issuance of a warrant."

We believe, however, none ever doubted the necessity of the exercise of judicial discretion.

Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of our Pennsylvania Constitution prohibit unreasonable searches and seizures. They provide that no warrant shall issue except upon probable cause supported by oath or affirmation, and that the warrant must describe the place to be searched and the person or things to be seized. This constitutional protection against unreasonable searches and seizures is not some new thing produced by recent decisions in the courts. It is rooted in long recognized principles of humanity and civil liberty. *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed.2d 568 (1897).

■ In order to insure the protection of those constitutional provisions both this Court and the United States Supreme Court require law enforcement officers to obtain a judicially issued search warrant absent certain exigent circumstances. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Commonwealth v. Silo,* 480 Pa. 15, 389 A.2d 62 (1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed.2d 94 (1979); *Commonwealth v. Linde,* 448 Pa. 230, 293 A.2d 62, *cert. dismissed,* 409 U.S. 1031, 93 S.Ct. 523, 34 L.Ed.2d 482 (1972); *Commonwealth v. Cockfield,* 431 Pa. 639, 246 A.2d 381 (1968); *Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A.2d 249 (1966). The Commonwealth has not argued at any stage of these proceedings that it did not have to obtain a warrant for the search of the Chandlers' residence.

In *Johnson v. United States,* the United States Supreme Court stated:

The point of the Fourth Amendment which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection con-

sists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.... When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

*Id.,* 333 U.S. at 13–14, 68 S.Ct. at 369 (footnote omitted).

■ The issuing judicial authority, in this case a District Justice, has the authority and obligation to draw such reasonable inferences as he will from the material supplied to him by police applying for a warrant and to make a finding on the issue of probable cause. Moreover, the magistrate is free to exact such assurances as he deems necessary to insure that the information on which probable cause is based has been obtained in a reliable way from a credible person. *Illinois v. Gates,* 462 U.S. 213 at 240, 103 S.Ct. 2317 at 2333, 76 L.Ed.2d 527 at 549 (1983).[4]

■ The magistrate's function is more than the ministerial one of administering an oath to an officer who has set forth facts the officer believes constitute probable cause. The magistrate must make a judicial determination, albeit a non-technical, common sense judgment, *see Gates,* as to whether probable cause exists. It is not enough for a policeman to present an affidavit to the magistrate prior to the search which affidavit the judiciary may consider on the

---

**4.** Pa.R.Crim.P. 2003(a) provides:

 No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

The comment to subsection (a) states:

 This Rule does not preclude oral testimony before the issuing authority, but it requires that such testimony be reduced to an affidavit prior to issuance of a warrant. All affidavits in support of an application for a search warrant must be sworn to before the issuing authority prior to the issuance of the warrant. "Sworn" includes affirmed. See Rule 3.

issue of probable cause with complete hindsight after the police have completed their search. The magistrate must actually make a finding of probable cause to validate the warrant before he issues it. Moreover, he must do it by written order. It is not enough that in this case the Commonwealth presented District Justice Tempest with sufficient facts to justify a finding of probable cause. The record does not show he rendered a judicial determination on that issue.

The Commonwealth argues that Pa.R.Crim.P. 150 permits it to "amend" the "warrant" in this case. Moreover, they argue that a line of appellate decisions have held that a defective warrant is not fatal where the defect does not leave the court unable to review the propriety of the issuance of the warrant. *Commonwealth v. Hamlin,* 503 Pa. at 217, 469 A.2d at 140 (magistrate dated issuance of warrant one day later than actual date); *Commonwealth v. Schilling,* 312 Pa.Superior Ct. 43, 458 A.2d 226 (1983) (omission of date and time of issuance not fatal where application for warrant and execution of warrant were on the same date; thus, a court could review propriety of warrant without looking beyond its four corners); *Commonwealth v. Swint,* 256 Pa.Superior Ct. 169, 389 A.2d 654 (1978) (magistrate inadvertently dated issuance of warrant one day earlier than actual date); *Commonwealth v. Chinea,* 246 Pa.Superior Ct. 494, 371 A.2d 944 (1977) (magistrate inadvertently omitted month from the date of issuance); *Commonwealth v. Wilds,* 240 Pa.Superior Ct. 278, 362 A.2d 273 (1976) (affiant subscribed to affidavit on wrong line). *But see Commonwealth v. Rineer,* 310 Pa.Superior Ct. 241, 456 A.2d 591 (1983). Where it is clear from the warrant that the District Justice intended to issue it but there are technical errors in the warrant our appellate courts have permitted its amendment. An omission or error in the warrant is fatal only if it deprives the suppression court of the ability to review the propriety of the issuance and execution of the warrant. *See Commonwealth v.*

*Hamlin,* 503 Pa. at 217, 469 A.2d at 140; *see also Commonwealth v. Schilling, supra.*

At the time of the suppression hearing, Pa.R.Crim.P. 150 provided:

> No person ... shall be discharged nor shall any case be dismissed because of any informal defects in the complaint, citation, summons or warrant, but the complaint, citation, summons or warrant, may be amended at any time so as to remedy any such informality.

Subsequently, on April 8, 1982, effective July 1, 1982, we amended Rule 150 to provide:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, summons, or warrant, or a defect in the procedures of this Chapter, unless the defendant raises the defect before the conclusion of the preliminary hearing and the defect is prejudicial to the rights of the defendant.

In a comment to the Rule, we explained:

> *Comment:* The 1981 amendment is intended to clarify when a defendant should be discharged or a case dismissed because of a defect; it eliminates disputes as to what is an informal defect or a substantive defect. Under this amendment, as a condition of relief regardless of whether the defect is in form, content, or procedure, the court or issuing authority must determine that there is actual prejudice to the rights of the defendant.

It is specious, however, to view this case as one involving an amendment to a "defective" warrant, informal, or otherwise, because no warrant, in fact, exists.[5] The District Justice's record shows it never issued. As such, there is no pre-existing finding of probable cause by a neutral judicial officer and no opportunity for the reviewing

5. The Commonwealth has never formally sought to "amend" the "warrant" in this case although, at oral argument, it raised that possibility for the first time.

court or the suppression court to review the propriety of the execution of the warrant.[6]

Reversed.

NIX, J., concurs in the result.

---

**6.** In *Commonwealth v. Lardo,* 240 Pa.Superior Ct. 107, 368 A.2d 324 (1976), the magistrate failed to sign either the affidavit or the warrant. Defendant filed a motion to suppress on the grounds that the magistrate had not issued a warrant. The suppression court granted the Commonwealth's motion to amend the affidavit and warrant and permitted the magistrate to sign and seal it. Superior Court concluded that the defect in the warrant was informal and, therefore, the Commonwealth had the right to amend at any time pursuant to Pa.R.Crim.P. 150. To the extent that *Lardo* holds that an unsigned warrant may be amended, it is overruled.