COMMONWEALTH of Pennsylvania, Appellant,

v.

Travis T. VAUGHAN, Appellee.

Superior Court of Pennsylvania.

Submitted Sept. 11, 2001.
Filed Dec. 27, 2001.

David P. Johnson, Asst. Dist. Atty., Lewisburg, for Com., appellant.

John P. Campana, Williamsport, for appellee.

Before McEWEN, President Judge Emeritus, TODD and KELLY, JJ.

TODD, J.

¶1 Before us is the Commonwealth's appeal of the trial court's order suppressing evidence seized pursuant to a search warrant found to be invalid. We are asked to determine the question of first impression of whether a warrant is valid which is otherwise complete, except that it lacks the signature of the district justice who ostensibly issued the warrant, where the district justice testified at the suppression hearing that he intended to sign and issue it. Finding that our Supreme Court's holding in *Commonwealth v. Chandler*, 505 Pa. 113, 477 A.2d 851 (1984) compels the conclusion that the unsigned warrant is invalid, we affirm.

¶2 The record reveals the following factual background. On January 21, 2000, the Lewisburg Police Department received information from two students that drug activity was taking place in Room 304 of the Smith Residence Hall on the campus of Bucknell University. The drug activity involved several students, including Appellant Travis T. Vaughan. Based on this information, Officer Aaron Dimm applied for a search warrant before District Justice Jeffery Mensch. After reviewing Officer Dimm's probable cause affidavit and swearing his oath, District Justice Mensch "issued" the warrant by filling out the form completely, including affixing his jurat,[1] but neglecting to sign the warrant over the line "Signature of Issuing Authority." Officer Dimm and others executed what they believed to be the valid search warrant at Room 304 of the residence hall. There, the officers confiscated 206 "hits" of LSD and various drug paraphernalia. Vaughan returned to the room as the search was taking place and made some incriminating statements concerning his ownership of the drugs and drug paraphernalia.

¶3 Vaughan was charged with possession with the intent to deliver a controlled substance[2] and possession of drug paraphernalia.[3] He filed a pretrial omnibus motion asserting, *inter alia,* that the warrant was invalid because it lacked the signature of the district justice and requesting, as a result of this deficiency, that the drug evidence and his incriminating statements be suppressed. The trial court, the Honorable Louise O. Knight, finding our Supreme Court's opinion in *Commonwealth v. Chandler, supra,* to be controlling, held the warrant to be invalid, granted Vaughan's motion, and suppressed the evidence seized pursuant to the warrant. The Commonwealth, certifying that this ruling has substantially handicapped its prosecution, appealed this decision. *See* Pa.R.A.P. 311(d). The Commonwealth asserts that the trial court erred in finding the warrant to be invalid and in rejecting its request to amend the warrant to add the missing signature.

---

1. The jurat is the certificate signed by the judicial officer stating that the affidavit of probable cause was sworn to and subscribed by the affiant before him. *Chandler,* 505 Pa. at 118, 477 A.2d at 853.

2. 18 P.S. § 780–113(a)(16).

3. 18 P.S. § 780–113(a)(32).

¶ 4 In order to insure the protections provided under the Fourth Amendment to the United States Constitution and Article I, Section 8 of our Pennsylvania Constitution against unreasonable searches and seizures, both the Pennsylvania Supreme Court and the United States Supreme Court require law enforcement officers to obtain a judicially-issued search warrant, absent certain exigent circumstances. *Chandler,* 505 Pa. at 122, 477 A.2d at 855. A prior independent judicial determination of probable cause is essential:

It is not enough, absent exigent circumstances, that a policeman believe the facts he has are probable cause for a search warrant. The people of this state and nation are constitutionally entitled to an independent judicial determination of probable cause before they must open to the policeman's knock at the door in the night. Moreover, that determination must be made before and not after the search. The written affidavit of probable cause simply insures an accurate record of the verified (sworn) facts the issuing authority had when he made his determination before the event.

* * *

Reasonable judges and legal scholars may well differ over the technicalities of how best to memorialize the facts the issuer of the warrant had when he issued it and how technical courts should be in reviewing his decision to issue. We believe, however, none ever doubted the necessity of the exercise of judicial discretion.

*Id.* at 121–22, 477 A.2d at 854–55 (citations omitted).

¶ 5 There is no dispute in this case that the district justice swore the oath of Officer Dimm, concluded that probable cause existed for the issuance of the warrant, and, in affixing his jurat, intended to issue it.[4] Indeed, District Justice Mensch testified at the suppression hearing that he intended to issue the warrant and only inadvertently omitted his signature as he was somewhat confused by the form, the warrant application having been his first. (N.T. Suppression Hearing, 7/17/00, at 7–13.) In the "Search Warrant" section of the warrant, he marked an "x" next to the line indicating a daytime warrant, and wrote "1/24/2000," indicating the last date on which the warrant could be executed. He filled in the dates on a line which when completed reads: "Issued under my hand this 22nd day of January 19 2000 at 9:00 P.M. o'clock." He checked the box under "Signature of Issuing Authority" indicating his title as "District Justice" and wrote in the date on which his commission expires, "January 2006." He thus completed the form in its entirety, but, crucially, omitted his signature over the line "Signature of Issuing Authority." Although, following the suppression hearing, the trial court found that "[u]nquestionably the District Justice intended to issue the warrant," (Trial Court Order, 7/18/00, at n. 4), the court determined *Chandler, supra,* was controlling and, as a result, concluded that the failure to sign the warrant in the appropriate place was fatal.

¶ 6 In *Chandler, supra,* our Supreme Court found that an unsigned warrant was constitutionally defective, requiring the evidence seized pursuant to the warrant to be suppressed, and reversed our Court's determination to the contrary. There, a police officer presented a warrant application and affidavit of probable cause to a

---

4. Although initially he contested it, on appeal, Vaughan does not dispute that probable cause existed to support the issuance of the warrant.

district justice. The district justice affixed his jurat to the affidavit section of the form, indicating that the affidavit had been sworn and subscribed to before him. However, the "issuance" section of the warrant, on its reverse side, was left completely blank: the magistrate did not sign or complete that section, nor otherwise indicate on the warrant form or the record that he had made a determination that probable cause existed for the warrant's issuance. The Court concluded that these omissions were fatal:

> The magistrate's function is more than the ministerial one of administering an oath to an officer who has set forth facts the officer believes constitute probable cause. The magistrate must make a judicial determination, albeit a nontechnical, common sense judgment, see *[Illinois v.] Gates,* [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ], as to whether probable cause exists. It is not enough for a policeman to present an affidavit to the magistrate prior to the search which affidavit the judiciary may consider on the issue of probable cause with complete hindsight after the police have completed their search. *The magistrate must actually make a finding of probable cause to validate the warrant before he issues it. Moreover, he must do it by written order.* It is not enough that in this case the Commonwealth presented District Justice Tempest with sufficient facts to justify a finding of probable cause. *The record does not show he rendered a judicial determination on that issue.*

*Id.* at 123–24, 477 A.2d at 856 (emphasis added); *see also Commonwealth v. Melilli,* 521 Pa. 405, 416, 555 A.2d 1254, 1260 (1989) (citing *Chandler* ). Given that proof of the constitutional requirement of a prior judicial determination of probable cause was missing from the record, the Court *held* that the warrant had never been is-sued. Further, because the warrant had never been issued, the "defect" could not be corrected by amendment as the Commonwealth requested, as there was no valid warrant to amend. *Chandler,* 505 Pa. at 126, 477 A.2d at 857.

■ ¶ 7 In the present case, the district justice unquestionably made a judicial determination that probable cause existed. This determination was made before the search warrant was "issued," and it was based on an affidavit filed of record and affirmed under oath by Officer Dimm. Additionally, the district justice completed the entire form, except for his signature. Unlike in *Chandler* where the issuance section of the warrant was left completely blank, here, that section was nearly completed; thus the face of the warrant is consistent with an intention by the district justice to issue the warrant. Also unlike in *Chandler,* here, the district justice testified at the suppression hearing that by affixing his jurat and otherwise completing the warrant he intended to issue the warrant. We are left, therefore, with the crucial question of whether the district justice's sole failure to sign the warrant in the appropriate place, despite a later finding on the record, based on testimony at the suppression hearing, that the district justice determined there was probable cause and intended to issue the warrant, is fatal.

¶ 8 The Court in *Chandler* suggests that extrinsic evidence (i.e., the district justice's testimony) might be relevant to an appellate court's assessment of whether there was a prior judicial determination of probable cause. Specifically, the Court noted that the district justice in that case "did not testify at the suppression hearing. We cannot know or infer that the District Justice intended to find probable cause and issue a warrant based on the affidavit and application." *Id.* at 121, 477 A.2d at 854.

Unfortunately, the Court did not complete this thought and did not indicate unequivocally that such testimony could save a constitutionally defective warrant. Rather, the Court strongly indicated that an unsigned warrant is unissued and that only the record *as it exists at the time the warrant was "issued"* is relevant: "However, we do know that [the district justice] *made no record finding* of probable cause and that he did not issue an order for a search warrant." *Id.* (emphasis added). In other words, the Court said that "this record ... shows he never entered an order issuing a warrant," *id.* at 119, 477 A.2d at 853, and that "[t]he District Justice's record shows it never issued." *Id.* at 126, 477 A.2d at 857. Moreover, as we have already noted, the Court was clear that the judicial determination of probable cause must be made "by written order." *Id.* at 124, 477 A.2d at 856. District Justice Mensch made no "record finding" of probable cause and we would be hard-pressed to conclude that an unsigned writing can constitute a written order of a court.[5] We must conclude therefore that an unsigned warrant is invalid.

¶ 9 This Court applied *Chandler* most recently in *Commonwealth v. Peticca*, 401 Pa.Super. 553, 585 A.2d 1065 (1991), and we find our decision there lends supports to our conclusion herein. In *Peticca*, we held that a warrant that was signed, but not "sealed," as required by Rule 2005 of the Pennsylvania Rules of Criminal Procedure (now Rule 205), was not constitutionally defective. We concluded that sealing the warrant was a ministerial act and that the constitutional requirements of *Chandler* were otherwise met:

Thus, consistent with the principle objectives recited in *Chandler* to approve a search warrant application, the issuing authority instantly "actually ma[d]e a finding of probable cause to validate the warrant before he issue[d] it ... by written order." Stated differently, the *record* shows that the issuing authority rendered a judicial determination on the issue of probable cause.

*Peticca*, 401 Pa.Super. at 559, 585 A.2d at 1068 (citations omitted) (emphasis original). We added:

We examined the sparse law on the question presented and conclude that the role of the issuing authority (as the arbiter of the presence or absence of probable cause) was not perverted in contravention of one's Fourth Amendment right to be free of unreasonable searches and seizures. *The essential function of the issuing authority was preserved at bar when Judge Battle affixed his signature on both the search warrant application and affidavit of probable cause to conclude that "probable cause" existed* to authorize the search of the appellant's premises.

*Peticca*, 401 Pa.Super. at 560, 585 A.2d at 1068–69 (emphasis added).

¶ 10 The district justice in this case failed to sign the warrant. As a result, at the time of the warrant application there was no "record determination" that probable cause existed and no "written order" to that effect. Accordingly, we must conclude that the warrant was never issued, necessitating the suppression of the evidence seized pursuant thereto.

¶ 11 We acknowledge that the Commonwealth makes a compelling argument.

5. The Supreme Court has since reinforced *Chandler*, noting that the error in that case, "where a magistrate did not sign a warrant form indicating that he had made a determination of probable cause," was one of "constitutional proportions, going to the lack of probable cause on the face of the affidavit and search warrant." *Commonwealth v. Edmunds*, 526 Pa. 374, 407 n. 14, 586 A.2d 887, 903 n. 14 (1991).

The nearly-completed warrant combined with the testimony of the district justice at the suppression hearing is evidence suggesting that the constitutional requirement of a prior judicial determination of probable cause has been met in this case. Yet our Supreme Court clearly has expressed the critical nature of a prior determination of probable cause and the necessity for a written order so signifying. While *Chandler* suggests that extrinsic evidence *might* be relevant to our analysis, we must defer to our Supreme Court to so state unequivocally and will not open the door to this method of salvaging a deficient warrant without that Court's explicit guidance.

■ ¶ 12 Having concluded that the unsigned warrant was, in effect, unissued, we address the argument presented by the Commonwealth, which was also presented in *Chandler*, that the Commonwealth should be allowed to remedy the defective warrant by amendment. The *Chandler* Court dismissed the argument:

> It is specious, however, to view this case as one involving an amendment to a "defective" warrant, informal, or otherwise, because no warrant, in fact, exists. The District Justice's record shows it never issued. As such, there is no preexisting finding of probable cause by a neutral judicial officer and no opportunity for the reviewing court or the suppression court to review the propriety of the execution of the warrant.

*Id.* at 126, 477 A.2d at 857 (footnote omitted). Referring to *Commonwealth v. Lardo*, 240 Pa.Super. 107, 368 A.2d 324 (1976), which arguably suggested such an amendment was permissible, the Court added: "To the extent that *Lardo* holds that an unsigned warrant may be amended, it is overruled." *Chandler*, 505 Pa. at 126 n. 6, 477 A.2d at 857 n. 6. Accordingly, the Commonwealth's request to amend was properly rejected by the trial court, and,

finding the warrant to be invalid, we affirm the trial court's order suppressing the evidence seized pursuant to it.

¶ 13 Order affirmed.