**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Quintae McLEAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 16, 2004.
Filed Feb. 18, 2005.

Anthony D. Jackson, Philadelphia, for appellant.

Lisa A. Gillick, Asst. Dist. Atty., Scranton, for Com., appellee.

BEFORE: KLEIN, PANELLA and JOHNSON, JJ.

OPINION BY KLEIN, J.:

¶ 1 Appellant Quintae McLean appeals from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County. Because we find McLean was not denied his speedy trial rights and because we find the trial court did not err in denying his motion to suppress, we affirm.

¶ 2 On January 31, 2003, Judge Michael J. Barrasse presided over the non-jury trial of defendant McLean. McLean was charged with various drug offenses. At the conclusion of the trial, defense counsel, Ernest D. Preate, Jr., sought leave to file a brief in support of a not guilty verdict. The court granted the request, giving defense counsel seven days to file a brief and giving the Commonwealth an additional seven days to file a reply.

¶ 3 Defense counsel filed his brief on February 7, 2003 and the Commonwealth filed its reply on February 14, 2003. On February 14, 2003 the court entered an order finding defendant guilty of two counts of possession of a controlled substance with intent to deliver and one count of possession of a controlled substance.

¶ 4 McLean was not made aware of his conviction until June 2003, when he wrote to the court clerk and requested a copy of the docket entries. The trial court acknowledges that due to a clerical error, the order was not sent to either defendant or defense counsel.[1] Additionally, Lackawanna County Probation was not notified of the conviction, and therefore McLean was not sentenced until September 25, 2003, seven months after verdict. By order dated November 1, 2004, this Court remanded to the trial court for the preparation of a Pa.R.A.P. 1925(a) opinion, which we have received. We now address McLean's issues on appeal.

¶ 5 McLean argues the trial court violated Pennsylvania Rules of Criminal Procedure 622 and 704 and, therefore, he was denied his constitutional speedy trial rights. Rule 622 provides that a verdict in a non-jury case shall be rendered within seven days of trial; Rule 704 provides that sentencing shall "ordinarily be imposed" within 90 days of conviction. We will address the violation of both rules as one since the delay in notice of the verdict resulted in the sentencing delay and they both implicate McLean's speedy trial rights. *See Commonwealth v. Young*, 385 Pa.Super. 136, 560 A.2d 204 (1989).

¶ 6 McLean, through his counsel, waived his right to have a verdict within seven days of trial. The court rendered the verdict within 14 days due to the defense counsel's request to file a brief. Mc-

---

1. At the sentencing hearing, Attorney Preate testified that he was not notified of the docket entries until he visited McLean in jail in July 2003, after McLean had received a copy of the docket in response to his request. Attorney Preate testified that he believed this was why McLean had discharged him. (N.T., Sentencing, 9/25/03). McLean is represented by new counsel on appeal.

Lean's claim that this "delay" indicates that "there must be reasonable doubt[ ]" is baseless. The real issue is the fact that the clerical error resulted in McLean not knowing that he had been convicted for approximately five months and in the sentencing delay. McLean was incarcerated during that time.

■ ¶ 7 In determining whether McLean's speedy trial rights were violated, we consider four factors: the length of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. None of the final three factors is either necessary or sufficient to the finding of a deprivation of the right, and each must be considered and weighed together. *Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935 (1983); *Commonwealth v. Padden*, 783 A.2d 299 (Pa.Super.2001).

■ ¶ 8 The first, the length of the delay, is a triggering factor. The delay here, five months until notice of verdict and seven months from entry of verdict until sentencing, is sufficient to trigger further inquiry.

■ ¶ 9 We next consider the reason for delay. The delay here was due to clerical error. Neither Rule 622 nor Rule 704 was aimed at addressing or eliminating clerical error. Protecting the accused from inexcusable or intentional delay on the part of the court or the Commonwealth, the "whim" or power of the state, is the underpinning of the right to a speedy trial. *See Commonwealth v. Campbell*, 425 Pa.Super. 514, 625 A.2d 1215, 1221 (1993). Those concerns are not implicated here.

¶ 10 With respect to McLean's affirmative assertion of his speedy trial rights, we note that McLean wrote to the court in June, 2003 and, after receiving a copy of the docket, filed a pro se motion to dismiss on July 21, 2003. New counsel entered his appearance on July 29, 2003. In his motion, McLean did assert his speedy trial rights. We balance this against both his and his attorney's lack of inquiry for the four months prior.

¶ 11 Finally, although McLean may have been subject to anxiety prior to his notice of the verdict, the fact that he was being held on other charges, that he was given credit for time served, and that his minimum sentence was three years, diminishes the degree of prejudice suffered.

■ ¶ 12 On balance, we find that these factors weigh against a finding that McLean's speedy trial rights were violated. The delay was significant, though not inordinate, McLean's affirmative assertion of speedy trial rights, the fact that the delay was the result of clerical error and neither intentional nor inexcusable on the part of the court or Commonwealth, and the degree that McLean's interests were prejudiced, weigh against a determination that McLean was denied his constitutional right to a speedy trial. *Young.*

¶ 13 In *Campbell,* the defendant was tried non-jury on October 17, 1991. The court deferred verdict pending the preparation of a transcript, which was filed on November 8, 1991. 625 A.2d at 1216. On February 26, 1992, defendant filed a petition for habeas corpus. A guilty verdict was rendered on March 24, 1992, essentially five months after trial (excluding the three-week period for the preparation of the transcript). Defendant was sentenced on August 13, 1992.

¶ 14 The Commonwealth conceded the violation but argued that Campbell suffered no prejudice because he was given credit for time served. This Court disagreed, finding the following concerns established prejudice:

- Trial was short and testimony straightforward;

- Defendant remained incarcerated for over five months before verdict was entered;
- Defendant was powerless to move case along;
- By the time he was sentenced, defendant had served almost the entire minimum sentence.

625 A.2d at 1220–1221.

¶ 15 Unlike *Campbell*, the trial court in this case issued a prompt verdict. The order was time-stamped on February 14, 2003 and entered in the docket. Further, as stated above, the concerns we had in *Campbell* are not present here. Had he inquired sooner, McLean could have proceeded with motions or requested a sentencing date. Though incarcerated, McLean was subject to a mandatory minimum sentence of three years, was given credit for time served, and was being held as well on other charges in Lackawanna County during that period (Criminal Docket 02–55).

¶ 16 With respect to Rule 704, we note again that the language specifies that sentencing "shall ordinarily be imposed within 90 days of conviction[.]" McLean argues that he was not sentenced for 175 days after verdict. We cannot, however, look at the sentencing delay in a vacuum. The delay in notice of the verdict resulted in the delay in sentencing. Further, with respect to the delay in sentencing, we find no prejudice. *See Commonwealth v. Still*, 783 A.2d 829 (Pa.Super.2001) (where defendant received credit for time served and failed to show prejudice, no violation of speedy trial rights); *see also Commonwealth v. Anders*, 555 Pa. 467, 725 A.2d 170 (1999); *Commonwealth v. Adams*, 760 A.2d 33 (Pa.Super.2000).

■ ¶ 17 In his statement of questions involved, McLean also claims the search

warrant is defective because the issuing authority did not properly sign it and, therefore, all evidence obtained as a result of the warrant should be suppressed. McLean argues that because the Honorable Trish Corbett, the issuing authority, placed her signature on the line entitled "Title of Issuing Authority" instead of the line entitled "Signature of Issuing Authority," the warrant is invalid. We disagree.

¶ 18 The Application for Search Warrant and Authorization form used here contains a warrant authorization "block" at the bottom of the form. In that block is a line designated for the "Signature of Issuing Authority." Directly below that line is a block designated "Title of Issuing Authority," with a box next to "District Justice" and a box next to "Common Pleas Judge," followed by a blank line. Judge Corbett checked the box marked "Common Pleas Judge" and signed on the blank line.

¶ 19 The line on which Judge Corbett signed was directly below, in fact less than one inch below, the line on which she should have signed. We do not find this error tramples on McLean's rights under Article I, § 8 of the Pennsylvania Constitution. *See Commonwealth v. Wilds*, 240 Pa.Super. 278, 362 A.2d 273, 277 (1976), citing *Commonwealth v. Conner*, 452 Pa. 333, 305 A.2d 341, 345 (1973) ("[S]earches conducted pursuant to warrants are to be favored over warrantless searches and thus 'must be tested with a commonsense, nontechnical, ungrudging, and positive attitude[.]'").

¶ 20 This case is distinguishable from both *Commonwealth v. Chandler*, 505 Pa. 113, 477 A.2d 851 (1984), and *Commonwealth v. Vaughan*, 789 A.2d 261 (Pa.Super.2001). In *Chandler*, the issuing authority affixed his jurat[2] to the affidavit

---

2. The jurat is the certificate signed by the judicial officer stating the affidavit of proba-

of probable cause, but did not sign the warrant authorization. 477 A.2d at 853. There, Trooper Pompei executed an application for a search warrant and an affidavit on a printed form titled Search Warrant and Affidavit and presented it to District Justice Tempest. The application specified the premises to be searched and the items to be seized. *Id.* Trooper Pompei signed the affidavit and District Justice Tempest merely affixed his jurat to the affidavit on a printed line below large type stating "sworn to and subscribed before me." *Id.* The Pennsylvania Supreme Court concluded that the district justice only evidenced the officer's recitation to him of those facts, under oath; he did not find them to be true *nor conclude that they justified a warrant. Id.* The Court stated:

It is not enough for a policeman to present an affidavit to the magistrate prior to the search which affidavit the judiciary may consider on the issue of probable cause with complete hindsight after the police have completed their search. The magistrate must actually make a finding of probable cause to validate the warrant before he issues it. Moreover, he must do it by written order. It is not enough that in this case the Commonwealth presented District Justice Tempest with sufficient facts to justify a finding of probable cause. The record does not show he rendered a judicial determination on that issue.

*Id.* at 856.

¶ 21 More recently, in *Commonwealth v. Vaughan,* this Court addressed the issue of whether the district justice's failure to sign the warrant in the appropriate place, despite a later finding on the record that the district justice determined there was

ble cause was sworn to and subscribed by the affiant before the judicial officer. *See Chan-*

probable cause and intended to issue the warrant, invalidated the warrant. This Court found it did. *Id.* at 266.

¶ 22 There, Officer Aaron Dimm applied for a search warrant before District Judge Jeffery Mensch. The district justice completed the entire form, except for his signature. This Court stated:

Unlike in *Chandler* where the issuance section of the warrant was left completely blank, here, that section was nearly completed; thus the face of the warrant is consistent with an intention by the district justice to issue the warrant. Also unlike in *Chandler,* here, the district justice testified at the suppression hearing that by affixing his jurat and otherwise completing the warrant he intended to issue the warrant.

*Id.* at 264. Despite the distinctions and despite a later finding on the record, based on testimony at the suppression hearing, that the district justice determined there was probable cause and intended to issue the warrant, the *Vaughan* Court determined that the failure to sign the warrant authorization in the appropriate place was fatal. *Id.*

¶ 23 In the case before us, Judge Corbett affixed her jurat on the affidavit of probable cause. She also signed the warrant issuance block, albeit on the wrong line, indicating, unlike in *Chandler* and *Vaughan,* that the facts sworn to her by Officer Gunther established probable cause and justified the search warrant order. Directly above Judge Corbett's signature in the warrant authorization or issuance block, the form states:

"WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I

*dler,* 477 A.2d at 853.

have found probable cause, I do authorize you to search the premises or persons described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

¶ 24 In both *Chandler* and *Vaughan,* the warrants were invalidated because although the issuing authorities had affixed their jurats on the warrant application (acknowledging affiant's statement of facts in support of probable cause), *neither had signed the warrant issuance order.* We find this distinction critical; it connects the affiant's recitation not only to the issuing authority's acknowledgment that those facts were sworn before him or her, but to the issuing authority's determination that those facts support a finding of probable cause. Without this, no warrant would issue. Pa. Const., art. I, § 8. *See also* Pa.R.Crim.P. 203 (requirements for issuance), 205 (contents of search warrant).

¶ 25 Judge Corbett's signature is in the warrant authorization block, on the line just below the correct line. This error did not render the suppression court or this Court unable to review the propriety of the issuance and execution of the warrant. It is clear from the warrant affidavit that Detective Gunther Pisa is the affiant. It is clear that the affiant appeared before the issuing authority, Judge Corbett, and swore to the contents of the affidavit. The affidavit of probable cause is subscribed by the affiant named at the top of the warrant, and signed by Judge Corbett. The warrant authorization is signed by Judge Corbett, albeit on the wrong line. McLean was in no way prejudiced by this technical error. There is no allegation that McLean's constitutional rights were violated by the procedure followed by the officers or the issuing authority, and he is not entitled to the windfall of suppression on the basis of this error.

¶ 26 Judgment of sentence affirmed.