J-S41018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAHLILL BROWN | : | |
| | : | |
| Appellant | : | No. 425 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 8, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002605-2022

BEFORE: BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BECK, J.: **FILED FEBRUARY 18, 2026**

Kahlill Brown ("Brown") appeals from the judgment of sentence entered by the Bucks County Court of Common Pleas ("trial court") after a jury convicted him of first-degree murder, conspiracy, firearms not be carried without a license, possessing an instrument of crime, recklessly endangering another person, false swearing, and the trial court convicted him of persons not to possess firearms.[1] On appeal, Brown challenges the trial court's denial of his suppression motion and the sufficiency of the evidence to sustain his convictions. Because we find no error in the trial court's decision, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 903, 6106(a)(1), 907(a), 2705, 4903(a)(1), 6105(a)(1).

In 2018, Joyce Brown-Rodriguez ("Brown-Rodriguez"), Brown's mother, began an extramarital affair with Christopher Wilson ("Wilson"), the decedent. On December 9, 2020, Brown-Rodriguez went to Wilson's place of employment at Kuusakoski, Inc., ("Kuusakoski") a recycling facility in Langhorne, Pennsylvania, because Wilson asked to borrow money from her. In the days leading up to this meeting, Brown-Rodriguez had sent Wilson numerous texts indicating that she was angry with him for ignoring her in recent weeks. Although Brown-Rodriguez and Wilson planned to meet in the parking lot at 9:00 a.m., Wilson did not come out to meet Brown-Rodriguez until around noon. While she waited in the Kuusakoski parking lot for Wilson, Brown-Rodriguez became further upset with Wilson for making her wait; she texted Brown and told him she needed his help. When Wilson eventually met with Brown-Rodriguez in the Kuusakoski parking lot, they argued for a time and then Brown-Rodriguez left in her car. On her way home, she called Brown and told him that she was having an affair with Wilson and that he was blackmailing her for money and threatening to expose their relationship to her husband.

The following morning, at around 5:50 a.m., Wilson arrived at work and parked next to a vehicle owned by Kevin Ferguson ("Ferguson"). While Wilson was conversing with Ferguson, an individual walked up to Wilson from behind Ferguson's car and began shooting Wilson. Norwood Dennis ("Dennis"), another one of Wilson's coworkers, also observed the shooting. Both Ferguson

and Dennis reported that the shooter was dressed in all black and wearing a ski mask that completely covered his face and that he emptied the entirety of his clip into Wilson. Both men observed the shooter was short in stature and that immediately after he stopped shooting Wilson, he got into a vehicle Ferguson later described as a black Toyota with heavily tinted windows that was being driven by another person.

Emergency medical personnel pronounced Wilson dead at the scene. His autopsy revealed he sustained five gunshot wounds—four to his torso and one to his head.

Middletown Township police officers responded to the shooting and interviewed several of Wilson's coworkers. They informed police that they observed Wilson arguing with Brown-Rodriguez the previous day and that she may have information about the shooting. Police went to Brown-Rodriguez's home in Philadelphia to interview her the same day. Detective Eric Landamia of the Bucks County District Attorney's Office subsequently obtained a search warrant for Brown-Rodriguez's cell phone records and learned that she had called and texted Brown late the night before Wilson's murder and that she called Brown shortly after police interviewed her the day of Wilson's murder. Detective Landamia obtained search warrants for, inter alia, Brown's cell phone records and was able to determine that Brown's phone was at his mother's home at around 4:00 a.m. the morning of Wilson's shooting and that

it was at Kuusakoski at 5:10 a.m. the same morning, where it remained until around 6:00 a.m.

Police arrested and charged Brown-Rodriguez and Brown for Wilson's murder. On November 8, 2022, Brown filed a motion to suppress several items seized pursuant to search warrants, including records of Brown's Verizon cell phone account, Citizens Bank account, Comcast account, Apple account, Google account, and Yahoo account, as well as cell phone tower records. *See* Omnibus Pretrial Motion, 11/8/2022, ¶¶ 78-148. On January 8, 2023, the trial court held a hearing on Brown's pretrial motions. On February 1, 2023, the trial court denied Brown's suppression motions.

In the intervening months, while in custody, Brown-Rodriguez attempted suicide. She ultimately pled guilty to third-degree murder and conspiracy in exchange for her testimony against Brown.

On July 12, 2023, Brown was convicted of the above-listed crimes. On November 8, 2023, the trial court sentenced Brown to life in prison without the possibility of parole. After having his direct appeal rights reinstated pursuant to a timely filed petition pursuant to the Post Conviction Relief Act ("PCRA"),[2] Brown filed the instant appeal. He presents the following issues for review:

> I.  Did the trial court err when it denied [Brown]'s motion to suppress the results of the searches of his phone records, bank records, Comcast records, Apple records, Google

_____

[2] 42 Pa.C.S. §§ 9541-9546.

records, Yahoo records[,] and cell tower records where the search warrant applications provided such a vague description of the shooter that was inconsistent with [Brown]'s physical characteristics that there was no probable cause to establish his identity or his involvement in any crime?

II. Was the evidence sufficient to support each of [Brown]'s convictions where the only testimony identifying him as the perpetrator came from his mother, a co-conspirator, and was so unreliable and contradictory that it was insufficient as a matter of law.

Brown's Brief at 4.

Although the first issue in the statement of questions involved section of Brown's brief purports to attack the validity of several search warrants obtained in his case, the argument section of his brief solely attacks the validity of the search warrant obtained for his Verizon cell phone records. *See* Brown's Brief at 13-21. We therefore confine our analysis to that warrant. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to ... develop the issue in any [ ] meaningful fashion capable of review, that claim is waived"). He argues that the affidavit of probable cause in the search warrant application for his cell phone records did not sufficiently connect him to Wilson's murder. *See id.*

Brown asserts that "the information in the affidavit of probable cause established that the police had reason to believe that [Brown-Rodriguez] might have been involved in the shooting, given her relationship with the victim, her public argument with him the previous day in the same parking lot where the shooting took place, … and the large number of answered calls and

texts she sent to him immediately before the killing." *Id.* at 15. He contends that the "only evidence linking him to the shooting, however, was the fact that witnesses described the shooter as a short individual and the fact that authorities suspected his mother of the crime." *Id.* Brown maintains that although the affidavit of probable cause references his phone conversations and text messages with his mother—both the day before Wilson's murder and after Brown-Rodriguez's interview with police—evidence of contact between a mother and son did not provide police with probable cause to believe they would find evidence of criminal activity on Brown's phone. *Id.* at 19. In his view, the affidavit of probable cause "failed to link [him] to the crime and failed to establish a fair probability that he had participated in the shooting or that evidence of his involvement in the crime would be found on his cell phone" and that the trial court therefore erred in denying his suppression motion. *Id.* at 20-21.

When reviewing the denial of a suppression motion, we bear in mind that "the trial court's findings of fact are binding upon us to the extent they have record support," but we review its legal conclusions de novo. *Commonwealth v. Adams*, 205 A.3d 1195, 1199 (Pa. 2019). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017)

(citation omitted). "Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." *Commonwealth v. Rivera*, 311 A.3d 1160, 1164 (Pa. Super. 2024) (citation omitted).

"Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of our Pennsylvania Constitution prohibit unreasonable searches and seizures." *Commonwealth v. Chandler*, 477 A.2d 851, 855 (Pa. 1984). "They provide that no warrant shall issue except upon probable cause supported by oath or affirmation, and that the warrant must describe the place to be searched and the person or things to be seized." *Id.* To obtain a search warrant, the Commonwealth must demonstrate to the magisterial district judge in one or more affidavits that it has probable cause to search in the requested location. Pa.R.Crim.P. 203(B). Using the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213 (1983), the issuing authority must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Katona*, 191 A.3d 8, 13 (Pa. Super. 2018) (en banc) (citation omitted), *aff'd*, 240 A.3d 463 (Pa. 2020). "The information offered to establish probable cause must be viewed in a common sense, nontechnical manner. Probable cause is based on a finding of the probability, not a prima facie showing of criminal activity, and deference is to

be accorded a magistrate's finding of probable cause." ***Commonwealth v. Manuel***, 194 A.3d 1076, 1081 (Pa. Super. 2018) (en banc) (citation omitted). "Probable cause does not demand the certainty we associate with formal trials. Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place." ***Id.*** (citation omitted).

"The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits." Pa.R.Crim.P. 203(B). Likewise, the reviewing court must limit its inquiry to the information within the four corners of the affidavit submitted in support of probable cause. ***Commonwealth v. Harlan***, 208 A.3d 497, 505 (Pa. Super. 2019).

In rejecting Brown's challenge to the denial of his suppression motion, the trial court explained:

> Based on the information contained within the search warrant, co-workers had seen Brown-Rodriguez arguing with Wilson at Kuusakoski, Inc. the day before the murder. Detectives also found eighty-five phone calls and a series of unanswered text messages from Brown-Rodriguez's phone to Wilson's phone and one phone call and eight text messages from Brown-Rodriguez's phone to [Brown]'s phone in the days leading to the murder. With this, the last person Brown-Rodriguez called before the murder and the first person she called after detectives had visited her was [Brown]. [Brown]'s car, a Toyota Corolla, was consistent with what witnesses saw at the scene of the murder: "a small, dark sedan with heavily-tinted windows." Such facts and circumstances made it reasonable for this [c]ourt to conclude there was a probability that [Brown] was somehow involved in the crime and therefore evidence of the crime would be found in his

records, including communication and location, or otherwise.
Therefore, the denial of the motion to suppress was not erroneous.

Trial Court Opinion, 4/14/2025, at 5-6 (record citations omitted).

Upon review, we conclude that the trial court's findings are supported by the record and that it did not err in denying Brown's suppression motion. Detective Landamia filed a detailed, eleven-page affidavit of probable cause with the search warrant application for Brown's Verizon cell phone records. *See* N.T., 1/18/2023, Ex. CS-1 ("Affidavit of Probable Cause"). The affidavit chronicled everything Detective Landamia had learned from his investigation of Wilson's murder to that point, including that witnesses (Wilson's co-workers at Kuusakoski) observed a short male, dressed in dark clothing, wearing a mask, approach Wilson just prior to 6:00 a.m. on December 10, 2020, and shoot him several times, killing him instantly. *Id.* at 2. The assailant immediately fled in a "black Toyota or black Pontiac" with heavily tinted windows. *Id.*

The Affidavit of Probable Cause further indicated that Wilson's co-workers observed him engaging in a verbal disagreement with Brown-Rodriguez the day before his murder. *Id.* at 2-3. The affidavit revealed that police interviewed Brown-Rodriguez on the day of Wilson's death, during which she admitted she had met with him at his workplace the previous day and showed police text exchanges that she sent to Wilson in the days leading up to his murder. *Id.* at 3-4. The text messages indicated that Brown-Rodriguez was upset with Wilson for ignoring her and not returning her

messages and calls. *Id.* at 4-5. The affidavit also stated that around the time of Wilson's murder, Brown-Rodriguez contacted her other son, Kahdeem Brown, who was in prison, and asked him to procure a firearm for her. *Id.* at 6.

The Affidavit of Probable Cause included that Detective Landamia obtained Brown-Rodriguez's phone records pursuant to a search warrant and the last person she spoke to prior to Wilson's murder was Brown, at 10:02 p.m. and 11:31 p.m. on December 9, 2020, when Wilson's shooting occurred just prior to 6:00 a.m. the following morning. *Id.* at 6-7. Brown-Rodriguez's phone records also showed that she contacted Brown almost "immediately" after her interview with police the day of Wilson's death. *Id.* at 7. Finally, the affidavit described Brown as 5'2" tall and drives a dark Toyota Corolla with heavily tinted windows, all of which is consistent with the description of the shooter and the vehicle in which the shooter fled the scene. *Id.* at 8.

As Brown concedes, the information contained in the Affidavit of Probable Cause established that police had reason to believe that Brown-Rodriguez was involved in Wilson's shooting. *See* Brown's Brief at 15. Contrary to Brown's assertions, however, the affidavit also demonstrates that police had probable cause to believe evidence relating to Wilson's murder would be found in Brown's Verizon cell phone records. Not only does Brown's height and his vehicle match the description of Wilson's shooter and the getaway car, but the Affidavit of Probable Cause expressly states that Brown-

Rodriguez's phone records indicated that she spoke with Brown on the phone late at night the night before Wilson's early-morning shooting and "immediately" after her interview with police the day of Wilson's murder. Affidavit of Probable Cause at 6-8. Based upon our review of the Affidavit of Probable Cause, we conclude that the totality of the circumstances demonstrates a fair probability that evidence relating to Wilson's murder would be found within Brown's Verizon cell phone records and that the trial court therefore did not err in denying his suppression motion. *See Manuel*, 194 A.3d at 1081.

In his second issue, Brown argues that the evidence was insufficient to sustain each of his convictions. Brown's Brief at 21-27. Specifically, he contends that the evidence was insufficient to identify him as the individual who shot Wilson because "the only evidence implicating [him] as [Wilson]'s killer was the self-serving testimony of … Brown-Rodriguez, who pled guilty to third-degree murder and criminal conspiracy and testified against [Brown] in the hopes of receiving a lenient sentence." *Id.* at 21. Brown maintains that Brown-Rodriguez lied to police throughout the investigation of Wilson's murder and that her testimony identifying him as the shooter "was so unreliable and contradictory that it should be deemed insufficient as a matter of law." *Id.* at 27.

Although Brown purports to challenge the sufficiency of the evidence of to support his convictions, his arguments attacking Brown-Rodriguez's

credibility conflate the concepts of evidentiary sufficiency and weight. As our Court has repeatedly explained, "sufficiency and weight claims are distinct." *Commonwealth v. Rivera*, 238 A.3d 482, 495 (Pa. Super. 2020).

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id.* at 495 (quotation marks and citation omitted).

A sufficiency review does not include an assessment of witness credibility. *Commonwealth v. Juray*, 275 A.3d 1037, 1043 (Pa. Super. 2022). "Instead, such arguments are more properly characterized as

- 12 -

challenges to weight of evidence." *Id.* (citations omitted). Additionally, it is well settled that an "appellant's challenge to the sufficiency of the evidence must fail[] where an appellant phrases an issue as a challenge to the sufficiency of the evidence[] but the argument that the appellant provides goes to the weight of the evidence." *Id.* (quotation marks and citations omitted).

Although we acknowledge Brown-Rodriguez certainly had incentive to testify against Brown and that she was the only witness to specifically identify him as Wilson's shooter, her testimony is nonetheless evidence that he killed Wilson. *See* Trial Court Opinion, 4/14/2025, at 4-5 (setting forth Brown-Rodriquez's testimony identifying Brown as the shooter). As this Court has held, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense[.]" *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018).

Brown's arguments attacking Brown-Rodriguez's credibility are more properly construed as a challenge to the weight of the evidence, not its sufficiency. *See id.*; *see also Rivera*, 238 A.3d at 495. Additionally, Brown did not preserve a challenge to the weight of the evidence prior to sentencing or in a post-sentence motion. *See Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014) ("A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before

sentencing, or orally prior to sentencing."). For these reasons, Brown's second issue must fail.

As both issues Brown raises on appeal lack merit, he is not entitled to relief.

Judgment of sentence affirmed.


Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: _2/18/2026_